**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**The LTV CORPORATION, and LTV Steel Company, Inc., Defendants.**

No. 87 Civ. 7261 (RWS).

United States District Court,
S.D. New York.

Oct. 14, 1988.

Pension Benefit Guar. Corp., Washington, D.C. (Gary M. Ford, General Counsel, Jeanne K. Beck, Paula Connelly, of counsel), Cleary, Gottlieb, Steen & Hamilton, New York City (George Weisz, of counsel), for plaintiff.

Davis, Polk & Wardwell (Lewis B. Kaden, Karen E. Wagner, Sharon Katz, Joan Greco, of counsel), Levin & Weintraub & Crames (Michael J. Crames, of counsel), New York City, for defendants LTV Corp., et al.

Buchanan Ingersoll, P.C. Pittsburgh, Pa. (R.A. King, Kenneth R. Bruce, of counsel), Mound, Cotton & Wollan, New York City (Stuart Cotton, of counsel), for David H. Miller and William H. Shaffer.

## OPINION

SWEET, District Judge.

Intervenor plaintiffs David Miller ("Miller") and William Shaffer ("Shaffer") (collectively the "Intervenors") have moved pursuant to Rule 23, Fed.R.Civ.P. to certify their action against defendants LTV Corporation and LTV Steel Company, Inc. (collectively "LTV") as a class action. Plaintiff Pension Benefit Guaranty Corporation ("PBGC") supports this motion. For the reasons set forth below, the motion is granted.

*Prior Proceedings*

This case is one of several complex actions surrounding LTV's declaration of bankruptcy. This action, an enforcement

action brought by PBGC to compel LTV to contribute to restored pension plans, is the subject of this court's June 22, 1988 opinion. The facts and prior proceedings in this case are thus set forth in detail in that opinion, familiarity with which is assumed. The facts relevant to this motion, however, concern LTV's refusal to abide by the PBGC's September 22, 1987 restoration order, specifically of the Jones & Laughlin Retirement Plan (the "J & L Plan").

The J & L Plan is a defined benefit plan of salaried employees sponsored by various contributors, including LTV Steel Corporation and four railroad companies not involved in the bankruptcy proceedings. The plan was originally terminated after LTV and sixty-five of its subsidiaries filed petitions under Chapter 11 of the Bankruptcy Code. However, on September 22, 1987, the PBGC restored the plan and notified LTV that participants were to be paid full benefits retroactive to January 13, 1987, the date of termination.

LTV instituted proceedings contesting the restoration in bankruptcy court. Those proceedings were later removed to this court. This court held in the June 22 opinion (a) that the decision to restore the J & L as well as other plans based on a determination that LTV Steel could afford the Plans was arbitrary and capricious and could not be sustained on the administrative record, and (b) that (i) as a matter of law, the adoption of the follow-on plans adopted by a reorganizing company following termination by the PBGC is not an abuse of Title IV, but (ii) even if such plans can be deemed abusive by the PBGC pursuant to an exercise of the agency's regulatory authority, the PBGC's finding here that the follow-on plans were abusive was arbitrary and capricious. The June opinion vacated the PBGC restoration notice of September 22, 1987.

The Intervenors filed this motion for class certification on March 23, 1988, and this court heard oral argument on the motion and deemed it fully submitted on June 6, 1988, before the June 22 opinion.

### Discussion

The Intervenors are individual participants in the J & L Plan who have not received benefits due under the plan. They seek to represent a class consisting of all persons who are participants in, beneficiaries of deceased participants in, and alternate payees of participants in the J & L Plan who claim damages as a result of the refusal of the J & L Plan and LTV, as plan administrator, to restore the plan. The potential class members reside throughout the United States and number in the thousands.

Under Rule 23 of the Federal Rules of Civil Procedure, there are four prerequisites to a class action. The action may be maintained if

(1) the class is so numerous that joinder of all members is impracticable, (2) there are common questions of law of fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

LTV does not question whether the class the intervenors seek to represent satisfies the first three prerequisites, however it does contest Miller and Shaffer's ability to represent the class adequately.[1] Additionally, LTV claims that class certification is unnecessary, duplicative and disruptive.[2]

### Adequate Representation

In order to offer adequate representation, " 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class

---

1. The issue of adequate representation often blends with the question of typicality of claim. *Kamean v. Local 363, International Brotherhood of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y. 1986), *app. dismissed without op.,* 833 F.2d 1002 (2d Cir.1986), *cert. denied,* 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed.2d 517 (1987).

2. In addition to Rule 23(a), a representative must satisfy Rule 23(b). In this case, that subsection is satisfied because "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Rule 23(b)(2).

members.'" *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, .156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)) (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). This requirement will "ensure that each claim will be prosecuted with diligence and care." *Kamean v. Local 363, International Brotherhood of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y.1986) (applying this standard to 23(a)(3) but stating that the inquiry overlaps with that necessary for 23(a)(4)), *app. dismissed without op.,* 833 F.2d 1002 (2d Cir.1986), *cert. denied,* 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed.2d 517 (1987). "Therefore, in order to maintain this action on behalf of the proposed class, the plaintiffs must demonstrate not only that they share the general interest of the absent class members ... but also that they do not possess other, potentially conflicting interests that could impair the faithful performance of their duties as class representatives." *Id.* (citing *Hansberry v. Lee,* 311 U.S. 32, 44, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940)).

▮ LTV contests Miller and Shaffer's ability adequately to represent the class on several grounds. First, it claims that the Intervenors, as retired employees, have less interest in the continued viability of LTV than active employees who fall into the class. Thus, it contends, the Intervenors will not be representing the best interest of the entire class.

For this proposition, LTV relies on *Kamean, supra.* In *Kamean,* union members were suing the union to recover damages, unpaid wages and wage benefits al-

legedly due from work on past projects. Class certification was denied because the proposed representatives were no longer connected with the union, were members of a competing union, and had no stake whatsoever in the continued viability of the union. Some members of the class, on the other hand, were active union members concerned with the life of the union. Thus, the Honorable Charles L. Brieant, held that the named plaintiffs had "failed to discharge their burden to demonstrate that they possess the necessary capacity for fair representation of the absent class members." *Kamean, supra,* 109 F.R.D. at 395.

This case differs in several respects. First, the Intervenors have no interest in a competing venture and thus have no desire to destroy LTV. More important, however, is that the Intervenors, and the class, do not seek a finite sum for services rendered; they seek restoration of a plan requiring ongoing contributions from the defendants. Thus, while the Intervenors have no continuing interest in receiving salary from LTV, they do have an interest in the ongoing financial viability of the company making it possible for continuing, uninterrupted benefit contributions.[3] In fact, it is the position of the Intervenors not that LTV must make all pension payments regardless of the financially crippling effects of such payments, but that LTV can financially afford to make ongoing contributions to the pension plan regardless of reorganization.

▮ Additionally, LTV contends that a group of proposed class members consisting of those who receive termination benefits equal to what they would have received under the J & L Plan have not been injured by the termination and thus are not properly represented by the Intervenors.[4] The

3. Under the applicable law, LTV is required to make continuing contributions to the plan, with failure to do so resulting in a lien on LTV property. 29 U.S.C. § 1082(f). Thus, the plaintiffs' rights are ultimately protected. However, resort to liens and potentially protracted litigation and liquidation processes locking up funds does not serve the purposes of those in whose interest it is to receive monthly pension benefits. Moreover, ERISA provides for termination

of pension plans when contributing sponsors prove distress. 29 U.S.C. § 1341.

4. According to Geoffrey C. Vaughan, Manager of Benefits Administration for LTV Steel, a large percentage of beneficiaries are receiving termination benefits. However, he did not state whether any benefits were received for the time between plan termination, January 1987, and post restoration order, October 1987.

Intervenors, however, do not purport to represent these individuals. Their petition for certification states that they seek to represent those that have been damaged by the LTV termination. Those who receive benefits, who have not been damaged, are not members of the class.

■ Next, LTV claims that those class members who receive benefits from a combination of PBGC funds and payments from the Individual Account Trust ("IAT"), a trust established by LTV, have interests opposed to those of the Intervenors.[5] This, it claims, is because J & L Plan funds will be exhausted by October 1993 and it is not clear whether IAT funds, designed to provide supplemental hardship payments which PBGC opposes, will be available. This, however, is not inconsistent with the Intervenors' position. First, LTV would be under a continuing obligation under law to contribute to the fund lest it would face a lien on its property. 29 U.S.C. § 1082(f). It is under no similar obligation to provide IAT payments. Second, restoration will obviate the need for such payments. Thus, contrary to LTV's contention, restoration of the plan directly supports the interest of those in the combination payment group who would, under a restored plan, receive payments they could rely on as opposed to those that could be terminated.

LTV next contends that the Intervenors are inadequate representatives because they purportedly do not understand their responsibilities as class representatives, have not asserted and will not assert any role in the direction of the litigation, and have not accepted financial responsibility for the claims. It relies in large part on the cases of *Weisman v. Darneille,* 78 F.R.D. 669 (S.D.N.Y.1978) and *Moll v. U.S. Life Title Insurance Co.,* 113 F.R.D. 625 (S.D.N.Y.1987). Those cases differ markedly from the case at bar.

■ In *Weisman,* the court held that the proposed class representative was incapable of representing a class of shareholders in a Section 10(b) case because he himself had been convicted of violating that very section through insider trading, because he lied to his counsel about his conviction, and because when asked he could not describe the nature of the claim and in fact had never even seen a copy of the complaint. The Intervenors in this case have exhibited interest in the claim at issue. Although it seems apparent they do not make independent litigation decisions, Miller belongs to and chairs the Retired Salaried Employees Benefits Committee, which votes on the directions to be given counsel. The Committee selected these individuals to represent the class. Additionally, both Miller and Shaffer meet frequently to discuss the case with counsel. The integrity of neither man has been questioned. No apt comparison can be made between the Intervenors in this case and the proposed representative in *Weisman.*

■ *Moll,* LTV contends, stands for the proposition that inability or unwillingness to defray the cost of litigation is grounds for denial of certification. It makes this claim based on the fact that the Intervenors have asserted and will assert no personal financial responsibility for the suit. In *Moll,* the court merely stated that Moll's ability to fund the litigation was discoverable when she accepted ultimate liability for litigation expenses. Here, the Intervenors accept no such liability; the liability lies with the Committee, which has accepted full responsibility for the costs of this litigation. Thus, the fact that Miller and Shaffer themselves will not pay does not upset the viability of this action. *Cf. Genden v. Merrill Lynch Pierce Fenner & Smith,* 114 F.R.D. 48, 53 (S.D.N.Y.1987) (named plaintiff's lack of resources irrelevant when counsel advancing costs; inability to reimburse based on bankruptcy or financial distress would be relevant).

In sum, LTV has presented arguments disputing the ability of these individuals *qua* individuals to represent the class. They have made no showing as to why individuals selected to represent a litigation

---

**5.** The IAT is a benefit component of an interim Collective Bargaining Agreement between LTV and the United Steelworkers of America.

committee, are inappropriate as named plaintiffs. Thus, Miller and Shaffer satisfy the requirements of Rule 23(a)(4). They and their counsel, individually and through the committee, have diligently pursued the claim thus far. *Ross v. A.H. Robins,* 100 F.R.D. 5, 7 (S.D.N.Y.1982). They share the concerns of the class, namely that the plan is restored to insure payment of benefits, either present or future, and they are adequate representatives.

*Necessity, Duplication and Disruption*

 LTV claims that class certification is unnecessary because a ruling requiring the restoration of the J & L Plan will automatically effect all members of the proposed class. It is true that "a Court may, in its discretion, deny certification to a proposed class meeting all the requirements of Fed.R.Civ.P. 23(a) and (b)(2) if it finds such certification unnecessary to ensure that all people similarly situated to the plaintiffs will benefit by any relief accorded those plaintiffs." *Denenberg v. Blum,* 93 F.R.D. 131, 133–34 (S.D.N.Y.1982). However, this only holds true "[w]here retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class...." *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978), *reh'g granted on other grounds,* 607 F.2d 540 (2d Cir. 1979).

In this case, the relief sought is not merely prospective restoration of the J & L Plan. The Intervenors on behalf of the class seek retroactive payments of benefits due dating back to January of 1987. Thus, in effect, damages are at issue, and class relief is appropriate.

 Finally, LTV has argued that class certification is duplicative and disruptive, respectively because the rights of the class will be protected as creditors of the bankrupt firm and because LTV is experiencing lengthy bankruptcy proceedings. However, the Intervenors herein seek more than protection as creditors of a bankrupt firm; they seek to enforce a pension plan. This consists not only of recovering payments due, but of restoring the plan for the future. Their concern in this respect differs from the ordinary creditor and thus a group of creditors cannot be expected to safeguard their interests. As LTV has provided no explanation for how a class action would disrupt bankruptcy proceedings other than to state that it would, class certification will not be denied on this ground.

*Conclusion*

Since the proposed class meets the requirements of Rule 23, Fed.R.Civ.P., the Intervenors' motion for class certification is granted, and Miller and Shaffer will be permitted to represent the class.

It is so ordered.