sional plaintiffs in order to coerce a settlement unfairly from the defendants. *See Cromer*, 205 F.R.D. at 134. None of the parties dispute that a fraud occurred here. A principal issue in the trial of the Section 10(b) claims against SSB and Grubman will be whether the plaintiffs can prove the defendants' knowledge of that fraud.

#### (d) *Class Period*

Finally, if a class is certified, the SSB Defendants request that the class period for the "Conflict-of-Interest Claim" be defined to end by July 2000, or at least January 2, 2001, instead of June 25, 2002. They contend that courts truncate the class period when curative information is disseminated to the market and there is no substantial question of fact as to whether the release has "cured the market." The SSB Defendants argue that no reasonable person could dispute that the market had been warned by July 2000 (or at least January 2001) about conflicts of interest at financial services firms including SSB, and the prices for WorldCom stock continued to decline despite Grubman having continuously assigned a buy rating to it for over a year.

▮ The two cases on which the defendants rely in fact held that class certification for the broader class period was appropriate because questions of fact remained as to whether the purportedly curative press releases effected a complete cure of the market. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir.1982); *Friedlander v. Barnes*, 104 F.R.D. 417, 421 (S.D.N.Y.1984). As these cases indicate, a class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market. *See Sirota*, 673 F.2d at 572.

Here, significant questions of fact remain as to whether the disclosures to which the SSB Defendants point provided an effective cure. Although press coverage indicted the independence of telecommunications analysts generally, and even Grubman in particular, crucial information particular to the relationship between SSB, Grubman, WorldCom, and Ebbers remained undisclosed during the Class Period. The Class Period runs to June 25, 2002, the date of the announcement of a

$3.8 billion overstatement by WorldCom. The SSB Defendants have pointed to no disclosure to the market during the Class Period that addresses with specificity the conflict of interest alleged in the Amended Complaint. Thus, questions of fact remain as to when and how the market was informed of the allegedly lucrative and illicit *quid pro quo* relationship, including the existence and extent of the Travelers loans, as well as Grubman's personal involvement in SSB's investment banking generally, and in the conduct of the business of WorldCom in particular. Given these substantial questions of fact, the Class Period should end, as plaintiffs propose, on June 25, 2002, the date WorldCom announced its need to issue its first massive financial restatement.

#### *Conclusion*

The Rule 23(a) and (b)(3) requirements for certification of a class action have been satisfied. The plaintiffs' motion to certify the Class is granted.

SO ORDERED.

▮

Henry SPANN, Carol Munley, and Catherine Chiapparoli, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

AOL TIME WARNER, INC., Warner Bros. Records, Warner Bros. Communications, Inc., the TWI/Music Pension Plan, the TWI Plan Administrative Committee, Warner–Elektra–Atlantic Corp. ("WEA Corp."), the Time Warner Excess Pension Plan, the Time Warner Excess Pension Plan Administrative Committee, Specialty Records, Inc., WEA Manufacturing Inc., a Delaware corporation, and any successor thereto, the WEA Manufacturing Pension Plan, the WEA Manufacturing Pension Plan Administrative Committee, Atlantic Recording Corpora-

tion, the Atlantic Recording Corporation Pension Plan, the Administrative Committee of the Plan for the Atlantic Recording Corporation Pension Plan, Time Warner Entertainment Company, L.P., the time Warner Pension Plan Administrative Committee, Warner Publishing, Inc., the Warner Publishing Pension Plan, the Warner Publishing Pension Plan Administrative Committee, and does 1–10, Defendants.

No. 02 Civ.8238 DLC.

United States District Court,
S.D. New York.

Dec. 24, 2003.

Ronald S. Kravitz, Kim Zeldin, Liner, Yankelevitz, Sunshine & Regenstreif LLP, San Francisco, CA, Allen C. Engerman, Law Offices of Allen C. Engerman, PC, Northbrook, IL, Christopher Allegaert, Cornelius P. McCarthy, Allegaert, Berger & Vogel, New York City, for Plaintiffs.

Lewis R. Clayton, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York City, for Defendants.

## OPINION AND ORDER

COTE, District Judge.

Henry Spann, Carol Munley, and Catherine Chiapparoli (collectively, "Plaintiffs") filed this action against AOL Time Warner, Inc. ("AOL TW"), several of its related companies, and six pension plans ("Plans") and their administrative committees (collectively, "Defendants"), alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* Specifically, Plaintiffs claim that the Defendants violated ERISA Sections 404 and 502, 29 U.S.C. §§ 1104, 1132, by failing to annualize Plaintiffs' partial years of compensation when calculating their pension benefits using the Plans' definition of "Average Compensation."

The Plaintiffs have moved for certification of a class consisting of all participants in the Plans who had received a partial year of compensation which was not annualized and used to calculate their Average Compensation. Because many absent class members have executed releases of claims against the Defendants, and consideration of those releases requires an individualized inquiry, the motion to certify a class is denied.

### Background

On April 8, 2002, the Plaintiffs filed a class action complaint ("Complaint") in the Central District of California. On October 8, 2002, Defendants' motion to transfer the action to the Southern District of New York was granted. With the exception of the issue of damages, discovery was completed on October 31, 2003. The parties are in the process of briefing cross motions for summary judgment.

On December 8, 2003, the Court heard oral argument on this motion for class certification. The relevant facts, as alleged in the Complaint and in the parties' submissions in

connection with the motion for class certification, are summarized as follows.

*The Plaintiffs*

*Spann*

Henry Spann was employed from 1988 to 1995 by AOL TW related companies, and was a participant in the TWI/Music Pension Plan ("TWI Plan") and the Time Warner Excess Pension Plan during this period. On March 31, 1995, Spann resigned and requested a lump sum pension benefit payment, which was paid on November 3, in the amount of $79,232.55.

Prior to receiving his lump sum payment, Spann signed two releases. On May 11, 1995, Spann executed a settlement agreement resolving his wrongful termination claim against Warner Brothers ("Warner") for a six-figure sum to be paid over a period of seven months. The agreement contained a provision stating

> Warner and Spann shall and *do hereby relieve, release and discharge Warner,* their heirs, successors and assigns, and their present and former representatives, agents, assigns, subsidiaries, divisions, affiliates, operating companies, parents, partners, officers, directors, stockholders, and attorneys and each of them, of and *from any and all claims,* debts liabilities, demands, obligations, promises, acts, agreements, costs, expenses (including but not limited to attorneys' fees), damages, actions and causes of action, *of whatsoever kind or nature, whether now known or unknown,* suspected or unsuspected they may have towards each other arising out of, based on, or *in connection with anything whatsoever done, omitted or suffered to be done in connection with Spann's employment with Warner....*

(a "General Release") (emphasis supplied).[1]

Prior to November 3, Spann also signed a standard release required of all employees electing to receive a lump sum pension distribution ("Lump Sum Release"), which stated

"I understand that when I endorse the check I receive for the amount of my payment, I will be releasing the Plan, the Committee, the Trustees and my Employer from any liability in connection with my participation in the Plan." Spann testified that the lump sum distribution was part of the settlement of his employment discrimination claim against Warner and that his attorneys were aware that he had elected to receive the lump sum payment.

On March 4, 1999, approximately three and a half years after receiving his lump sum pension benefit payment, Spann challenged the payment by letter to the Manager of Pension Plans for the Time Warner Corporate Employee Benefits Department. Spann asserted that his compensation in 1995 should have been annualized pursuant to Section 3.4(a)(i) of the TWI Plan, which provides:

> Average Compensation. (a) The Average Compensation of a Participant shall be his average annual Compensation for the five consecutive calendar years in which he receives Compensation which results in the highest average.
>
> (i) *For any period that is less than a full calendar year,* a Participant's compensation shall be determined by multiplying the Compensation actually received by the Participant for such period by a fraction, the numerator of which is twelve and the denominator of which is the number of months (with any fraction of a month counted as a full month for this purpose) in such period for which Compensation was actually received. (Vol. 2, D 11)

(Emphasis supplied). An employee's pension benefit under the Plan is determined on the basis of the individual's Average Compensation.

On August 17, 1999, Spann's claim was denied on the ground that his benefits were correctly calculated without the annualization of 1995 income. He appealed the denial on September 15, and this appeal was denied on

---

1. The Court follows the nomenclature adopted by the parties in their submissions by referring to broad releases of employment-related claims in severance, separation and settlement agreements signed by AOL TW employees as "General Re-leases." As described below, however, these Re-leases were signed under a wide variety of individual circumstances that renders them far from uniform.

November 12 by the Administrative Committee of the Time Warner Plans ("Administrative Committee"). The Administrative Committee stated that Section 3.4(a)(i) is used only in a situation in which the employee has participated in the plan for a period less than a full calendar year. Spann claims that the TWI Plan's failure to annualize his 1995 compensation resulted in an underpayment of approximately $19,300 at the time of his lump sum distribution.

### Munley

Carole Munley was employed by WEA Manufacturing, Inc. ("WEA") from 1989 to 1997, and was a participant in the WEA Manufacturing Plan ("WEA Plan"). She requested a lump sum pension benefit payment in January 1992, and received a distribution of $11,303.15 that month. Munley signed a Lump Sum Release prior to receiving the distribution.

On February 23, 2001, Munley challenged the calculation of her lump sum pension benefit by letter to the Corporate Employee Benefits Department of the WEA Manufacturing Pension Plan ("WEA Benefits Department"). Munley claimed that her 1997 compensation should have been annualized under Section 3.4 of the Plan. Munley received no response. On June 14, Munley sent a second letter to the WEA Benefits Department appealing the silent denial of her claim. This letter also went unanswered. Munley claims that the WEA Plan's failure to annualize her 1997 compensation resulted in an underpayment of $1,100.00 at the time of her lump sum distribution.

### Chiapparoli

Catherine Chiapparoli was employed by WEA from 1986 to 1985, and was a participant in the WEA Plan. In 1995, Chiapparoli elected to receive monthly distributions from the WEA Plan, which amount to $2,833.22 per year. Because she did not choose to receive a lump sum payment, Chiapparoli did not sign the Lump Sum Release executed by the other named Plaintiffs. As did Munley, Chiapparoli appealed the calculation of her annual distributions based on the WEA Plan's failure to annualize her 1995 income in a letter to the WEA Benefits Department dated February 23, 2001. Chiapparoli received no response, sent a second letter on June 14 appealing the silent denial of her claim, and again received no response. Chiapparoli claims that the WEA Plan's failure to annualize her 1995 compensation results in an underpayment of approximate $88 per year.

### The Proposed Class

Plaintiffs seek certification pursuant to Rules 23(a) and either 23(b)(1), (b)(2), or (b)(3), Fed.R.Civ.P., of a plaintiff class defined as follows:

> All participants of Defendant Plans whose Average Compensation included a period that was less than a full calendar year and whose Average Compensation was not determined by multiplying the Compensation actually received by the Participant "[f]or such period by a fraction, the numerator of which is the number of months (with any fraction of a month counted as a full month for this purpose) in such period for which Compensation was actually received," as specified in the Plans, or the spouses, designated beneficiaries, executors, successors, representatives, heirs or assigns of such persons, and all persons who may become entitled to receive such benefits from the Plans or the spouses, designated beneficiaries, executors, successors, representatives, heirs or assigns of said persons.

(quoting Plan language at Section 3.4(a)(i)) [2] (the "Class").

Section 3.4(a)(i) was enacted in June 1994 along with changes and amendments to the Plans. The amended Plans were made retroactive to January 1, 1989. The Plans were amended and restated as of January 2000, and the language of Section 3.4(a)(i) was not included in the 2000 Plans. The Class includes participants who left employment between January 1989 and December 1999 ("Class Period").

---

**2.** The definition of Average Compensation is at Section 3.4 for all Plans except the Cable Plan, where it is located at Section 3.2. References in this Opinion to Section 3.4 also include the identical language at Section 3.2 of the Cable Plan.

Numerous members of the Class signed General and Lump Sum Releases. During the ten-year period covered by the Class, employees departing the company entered into a variety of severance, separation, and settlement agreements that released AOL TW and its related companies from liability in connection with the signatory's employment. Employees left the company under a wide variety of circumstances, pursuant to large-scale reductions in force, voluntary separation agreements, discharge by the employer, and negotiated settlement agreements; some employees negotiated individual employment contracts and separation agreements; some employees, particularly those who were highly-compensated, were represented by counsel when they executed release agreements; and AOL TW related companies did not have uniform policies governing the negotiation of employment and separation agreements.

Defendants have provided numerous examples of different agreements containing general releases of employment claims executed by employees departing AOL TW under different circumstances during the Class Period. The agreements provided all contain general releases of employment-related claims against the signatory's employer, although the precise language of the release provisions, as well as contract provisions relating to notice and attorney consultation, differ among the agreements. Defendants also note that all employees receiving their pension benefits in the form of a lump sum payment signed the standard Lump Sum Release, although the circumstances in which the Lump Sum Releases were executed vary widely. Spann, for example, executed a Lump Sum Release in connection with the settlement for which he had legal representation.

### The Defendant Plans

The Plaintiffs have brought claims against six pension plans sponsored by AOL TW and its related companies: TWI/Music Pension Plan, Time Warner Excess Pension Plan, WEA Manufacturing Plan, Atlantic Recording Corporation Pension Plan, Time Warner Cable Pension Plan ("Cable Plan"), and Warner Publishing Pension Plan. All of the Plans contain the same definition of Average Compensation. The Complaint also names as defendants the six administrative committees charged with interpreting and administering the Plans. In practice, the administrative committees for five of the Plans (excluding the Cable Plan) are composed of the same members, who meet in New York City to determine claims on behalf of the five Plans (the "Administrative Committee").

A separate administrative committee meeting in Stamford, Connecticut, is responsible for the interpretation and administration of the Cable Plan (the "Cable Administrative Committee") (together, the "Administrative Committees"). The Cable Administrative Committee has never interpreted the "Average Compensation" term or considered a claim for additional benefits.

### The Claims

The Complaint asserts three claims for relief. First, Plaintiffs allege that Defendants violated ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by failing to act in accordance with Plan documents and applicable regulations, and bring suit under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under the Plans. Plaintiffs seek benefits and interest owed to the Class, in an amount "not less than $20,000,000." Second, Plaintiffs allege a claim for breach of fiduciary duty, asserting that AOL TW and the administrative committees (collectively, "Fiduciary Defendants") breached their fiduciary obligations to the Plaintiffs and the Class, in violation of ERISA Sections 404, 29 U.S.C. § 1104, 405, 29 U.S.C. § 1105, and 409, 29 U.S.C. § 1109. Third, Plaintiffs allege a claim for declaratory relief, seeking a judgment that (1) Plaintiffs are entitled to the full amount of their benefits under the Plans, (2) Defendants are required to administer the Plans according to their terms and to provide all benefits to which Plaintiffs are entitled, (3) Defendants' failure to pay Plaintiffs and the Class the full amount of their benefits is contrary to the Plans' terms and violates applicable law and regulations, and (4) Defendants' failure to provide complete information concerning the basis for the denial of

benefits constitutes a breach of fiduciary duty.

### Discussion

■■■ In reviewing a motion for class certification, the question is not whether the plaintiff has "stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (citation omitted). The plaintiffs bear the burden of satisfying the requirements of Rule 23, Fed. R.Civ.P. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999). Although the determination of whether to certify a class is not an occasion for an examination of the merits of the case, a court must conduct a "rigorous analysis" to decide if the plaintiffs have met their burden of establishing the prerequisites for certification under Rule 23. *In re Visa Check/MasterMoney,* 280 F.3d 124, 135 (2d Cir.2001) (citation omitted); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990).

The plaintiffs seeking certification must demonstrate that the proposed class action fulfills the four requirements of Rule 23(a). *See In re Visa Check/MasterMoney,* 280 F.3d at 132. Rule 23(a) states that class members may act as class representatives only if

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses or the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P.

Plaintiffs are also required to prove that the class action can be maintained under one of the three categories of Rule 23(b). Plaintiffs first propose certification under either Rule 23(b)(1) or (b)(2), neither of which provides for class members to receive notice of

the litigation or to exclude themselves as a matter of right. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833 n. 13, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (discussing Rule 23(b)(1)). A class may be certified under Rule 23(b)(1) if litigation by individual class members would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Rule 23(b)(1), Fed.R.Civ.P. Rule 23(b)(1)(A), on which Plaintiffs rely in their motion for class certification,[3] covers cases in which the defendant is "obliged by law to treat the members of the class alike" or in which the defendant "must treat all alike as a matter of practical necessity." *Amchem Prods.,* 521 U.S. at 614, 117 S.Ct. 2231.

■■■ A class may be certified under Rule 23(b)(2) if the defendant has acted or refused to act on grounds generally applicable to the class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2), Fed.R.Civ.P. When presented with a motion for class certification under Rule 23(b)(2) of a claim seeking injunctive relief and non-incidental money damages, a court must find that "the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant" and that class treatment would be efficient and manageable, thereby promoting judicial economy. *Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 164 (2d Cir.2001).

In the alternative, Plaintiffs move for certification under Rule 23(b)(3), which requires a finding that "the questions of law or fact

---

**3.** Plaintiffs make no argument that the Class should be certified under Rule 23(b)(1)(B), which commonly addresses recovery from a "limited fund." *Ortiz,* 527 U.S. at 834, 119 S.Ct. 2295. Plaintiffs' claim for certification under Rule 23(b)(1) is therefore addressed as a claim for certification under Rule 23(b)(1)(A).

common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), Fed.R.Civ.P. The Rule 23(b)(3) predominance inquiry is more demanding than the commonality determination required by Rule 23(a), as a Rule 23(b)(3) action is designed to "secure judgments binding all class members save those who affirmatively elect[ ] to be excluded" and requires that courts look closely to ensure that the class action "will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 614–15, 117 S.Ct. 2231 (citation omitted).

*Rule 23(a) Requirements*

1. *Numerosity*

▉▉▉ To satisfy the numerosity requirement under Rule 23(a), plaintiffs must show that joinder is "impracticable," not that it is "impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Numerosity is presumed when a class consists of forty or more members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).

Plaintiffs allege that the Class includes at least 10,000 members. Defendants argue that the Plaintiffs' estimate of the Class size was based on several inaccuracies and is consequently overstated. While Defendants dispute Plaintiffs' estimate of class size, there is no dispute that the Class consists of many more individuals than forty.

2. *Commonality*

▉▉▉ The commonality requirement of Rule 23(a) requires plaintiffs to show that the action raises an issue of law or fact that is common to the proposed class. *Robinson*, 267 F.3d at 155; *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (*per curiam* ). Plaintiffs' claims implicate several common issues of law and fact.

Plaintiffs' claim to recover benefits under ERISA Section 502 is based on the argument that Defendants miscalculated benefits by failing to annualize partial years of compensation when calculating Average Compensation, raising questions of law and fact common to members of the Class. Plaintiffs' allegation that Fiduciary Defendants breached their duty to the Plans and plan participants by failing to administer the Plans in accordance with their terms also raises a question of law applicable to the members of the Class. Defendants do not contest that Plaintiffs have satisfied the commonality requirement of Rule 23(a).

3. *Typicality*

▉▉▉ The typicality requirement of Rule 23(a) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155; *Marisol*, 126 F.3d at 376. The typicality and commonality requirements together serve as "guideposts" for the court to determine "whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly protected in their absence." *Caridad*, 191 F.3d at 291 (citation omitted). In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class. Although "the mere existence of individualized factual questions with respect to the class representative's claims will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir.2000) (citation omitted).

▉▉▉ In analyzing whether the Plaintiffs' claims are sufficiently interrelated to those brought on behalf of the Class, it is essential to begin with an understanding of the framework for prosecuting the ERISA claims asserted here. First, ERISA generally requires a beneficiary to exhaust a plan's administrative remedies before bringing a

suit for benefits. *See, e.g., Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 107 (2d Cir.2003) (survivor income benefits). Exhaustion facilitates Congress's desire that ERISA trustees rather than courts make the decisions that affect plan beneficiaries, and that a record be created for review by a court when review becomes necessary. *Davenport v. Abrams,* 249 F.3d 130, 133 (2d Cir.2001). Exhaustion is unnecessary, however, when there is a "clear" and "positive" showing that the undertaking would be futile. *Id.* (single plaintiff case); *Fallick v. Nationwide Mutual Ins. Co.,* 162 F.3d 410, 420–21 (6th Cir.1998) (applying futility exception to named plaintiff and proposed class); *Selby v. Principal Mutual Life Insurance Co.,* 197 F.R.D. 48, 56 n. 10 (S.D.N.Y.2000) (exhaustion of equitable claims unnecessary when it was unclear that procedures for administrative exhaustion existed).

■ Second, when an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of that plan, the court employs an arbitrary and capricious standard to review the fiduciary's decision. *Burke,* 336 F.3d at 109–10. In such circumstances, the court's review is limited to the administrative record unless the court finds "good cause" warranting the introduction of additional evidence.[4] *Krizek v. Cigna Group Insurance,* 345 F.3d 91, 97 (2d Cir. 2003).

■ Third, when a plan administrator does not raise a defense during an individual's administrative review process, the administrator may be deemed to have waived that defense as to the individual. *Lauder v. First UNUM Life Insurance Co.,* 284 F.3d 375, 382 (2d Cir.2002); *see also Pitts v. Am. Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir. 1991). To decide whether a defense has been waived, a court must conduct a "case-specific analysis" informed by several principles. *Lauder,* 284 F.3d at 381. As an initial matter, a court may not find waiver if doing so would expand the scope of coverage permitted under the plan. *Id.* For instance, a

required element of coverage cannot be waived. *Id.* at 380. In addition, courts should not require administrators to "imagine every conceivable basis" for denial of a claim, out of concern that such a requirement would cause ERISA notices to become "meaningless catalogs" of reasons for denial. *Id.* at 382. The *Lauder* court emphasized the importance of determining whether the administrator was aware of a given defense at the time of the administrative decision, and if so, why the administrator chose not to rely on the defense as a reason for denial. *Id.*

■ Fourth, a beneficiary's waiver of a claim to benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims. *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 131 (2d Cir.2001); *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 231 (2d Cir.1995); *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1368 (2d Cir.1991). The essential question for the court in evaluating a release of claims under ERISA is "whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary." *Sharkey,* 70 F.3d at 231 (citation omitted). A court's examination of an ERISA waiver may include, but is not limited to, the following six factors:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of the plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by an attorney as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok,* 935 F.2d at 1368 (citation omitted).

Plaintiffs have not shown that their claims are typical of the claims of a Class consisting

---

4. In their submissions in connection with the class certification motion, the parties do not contest the application of the "arbitrary and capricious" standard of review. Even if there were *de*

*novo* review of the plan administrator's determination, however, the review would still be limited to the administrative record absent a showing of good cause. *Krizek,* 345 F.3d at 98.

of numerous members who signed General Releases, Lump Sum Releases, or both. Even though two of the Plaintiffs signed Releases—Spann signed both a General and Lump Sum Release, and Munley signed a Lump Sum Release—the Releases insert individualized issues into this lawsuit, and those individualized issues prevent a finding that the Plaintiffs' claims are typical of those brought for the benefit of the Class. This is true whether or not it is appropriate to consider the Releases when resolving the individual claims asserted by Spann and Munley.

As Plaintiffs themselves argue, the Releases Spann and Munley executed are likely outside the scope of the court's review. Both Spann and Munley challenged the Plans' interpretation of Section 3.4(a)(i), exhausting their administrative remedies as is required for claims brought under ERISA. In response to Spann's claim, the Administrative Committee relied solely on its interpretation of Section 3.4(a)(i). In response to Munley's claim, the WEA Plan remained silent. Therefore, the administrative record for these two Plaintiffs consists only of arguments concerning the interpretation of Plan language, and does not include mention of either the General or Lump Sum Release. As a result, the Court's review of their claims is probably limited to the administrative record absent good cause warranting the expansion of the record, and no party argues that good cause exists.

Even if the Court's review of the claims of Spann and Munley is restricted to their administrative records, that does not mean that the existence of the Releases becomes irrelevant to this proposed class action. Many members of the Class signed Releases, and the absent class members have not yet exhausted their administrative remedies. The Administrative Committees could rely not only on an interpretation of plan language

but also on the Releases to deny any claims brought by absent class members.[5] It may be appropriate to excuse the absent class members' failure to exhaust their claims concerning the reading of Section 3.4(a)(i) on grounds of futility, given the Administrative Committee's demonstrated stance with respect to the interpretation of Average Compensation.[6] That finding of futility, however, should not excuse absent class members of their obligation to bring their claims for benefits before the Administrative Committees, since to do so would preclude the Administrative Committees from considering the Releases signed by absent members of the Class and from relying on the Releases as an additional ground for denial of the claims.

Plaintiffs have provided no support for their bald assertion that because Defendants did not rely on the Releases signed by Spann and Munley, they have waived this defense with respect to all putative members of the Class. The Plaintiffs have not shown, for instance, that the Administrative Committees have ignored the Releases executed by any appreciable number of plan participants who have signed Releases and who have presented claims to the Administrative Committee. Indeed, it is undisputed that no other plan participant has made a claim of the nature asserted here. In sum, even though the Administrative Committees may be found to have waived their right to rely on the Releases signed by Spann and Munley in denying their claims for benefits, Plaintiffs have not shown that that waiver for these two plan participants should be imputed to the claims asserted on behalf of the entire Class.

Once it is necessary to consider the Releases, either because they may be considered with respect to Spann and Munley themselves, or because they should be considered for absent class members, it is no

---

5. While the Plaintiffs contend that the Releases do not as a matter of law bar these ERISA claims, they do not dispute that the Administrative Committees that denied Spann and Munley's claims could, if they had chosen to do so, have articulated the denial as based in whole or in part on the Releases Spann and Munley had executed.

6. Since the Court finds that the Plaintiffs' claims are not typical of the Class, it need not reach issues of typicality specific to the Cable Committee. The Cable Committee, which is composed of different members than the Administrative Committee, has never interpreted the Average Compensation term in the Plan. There appears to be, therefore, no basis for a finding that a failure to exhaust the Cable Plan's administrative remedies is excused on grounds of futility.

longer possible to find that the claims of any of the three Plaintiffs are typical of the claims of the Class. To the extent that the Releases could provide a defense as to recovery under the claims posed in this lawsuit, that defense requires a fact-specific inquiry into the circumstances of the execution of each individual's release, as mandated in *Laniok* and its progeny. *Laniok*, 935 F.2d at 1368. The necessity for an individualized inquiry means that, so long as it is appropriate to consider the Releases at all, their existence presents an insurmountable barrier to class-wide adjudication of these claims.[7] In addition, this is true if the Releases must first be considered by the Administrative Committees, and is certainly true if, as the Defendants argue, the Releases may be considered in this litigation even in the absence of any showing that they were part of any administrative record. Therefore, Plaintiffs do not bring claims typical of a Class that includes numerous members who have executed releases of their rights to pursue claims for benefits under ERISA.

 Plaintiffs contend that class members' execution of General Releases in connection with severance, separation, and settlement agreements is not relevant to a motion for class certification because the General Releases do not specifically name the Plans or their Administrative Committees and are therefore invalid with respect to these Defendants. An individual's general release of employment claims, however, may waive an employee's right to recover benefits under ERISA. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir.2002); *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1117 (7th Cir. 1990). *But see Antoniou v. Thiokol Corp. Group Long Term Disability Plan*, 849 F.Supp. 1531, 1534 (M.D.Fla.1994).

Similarly, Plaintiffs assert that the execution of Lump Sum Releases by members of the Class does not weigh against a finding of typicality because the Lump Sum Releases are unenforceable as a matter of public policy under ERISA Section 410(a), 29 U.S.C. § 1110(a), and because they are not supported by consideration. The cases on which Plaintiffs rely do not support this argument. *Rosenbaum v. Davis Iron Works, Inc.*, 669 F.Supp. 813, 817 (E.D.Mich.1987), has been superceded by *Lockheed v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), which held that requiring an employee to waive employment-related claims in exchange for benefits under ERISA is not a prohibited transaction between the plan sponsor and participant. *Id.* at 894, 116 S.Ct. 1783. *Glugover v. Coca–Cola*, No. 91 Civ. 6331(PKL), 1993 WL 312269 (S.D.N.Y. Aug.12, 1993), held only that there was a material issue of fact as to whether the defendant was already bound by an oral promise that rendered the consideration provided by the release redundant. *Id.* at *6–7. Determination of whether the Lump Sum Releases are supported by adequate consideration requires an interpretation of terms of the Plan conditioning lump sum benefits upon an employee's satisfaction of consent requirements,[8] as well as the circumstances surrounding the execution of the Lump Sum Releases. While a motion for certification is not the occasion to reach the merits of Plaintiffs' claims, Plaintiffs have not yet shown that the Lump Sum Releases would be excluded from administrative review or that when considered, would not require an individualized, fact-intensive inquiry.

Plaintiffs further argue that any concerns about the typicality of Plaintiffs' claims can be remedied by creating subclasses of plaintiffs who signed different releases. Plaintiffs have not, however, defined any appropriate subclasses in this litigation.

---

**7.** The fact that putative class members signed releases at different times and under different circumstances distinguishes the present action from *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877 (6th Cir.1997). In *Bittinger*, the class consisted only of retired hourly workers whose insurance benefits expired at the termination of a collective bargaining agreement, and the releases at issue were required of all workers who wished to enroll in an alternative insurance plan. *Id.* at 879. The court suggested that a subclass of employees who signed releases might be necessary to remedy typicality concerns. *Id.* at 884.

**8.** At oral argument, Defendants identified Sections 6.3(iv) and 9.1.

It does not appear that the creation of subclasses of individuals who signed General and Lump Sum Releases would resolve the difficulties described here, specifically, the barriers to finding a named plaintiff's claim to be typical of the Class since a fact-specific inquiry is required to determine whether each individual's waiver of ERISA claims was knowing and voluntary. *See Sharkey,* 70 F.3d at 231; *Walker v. Asea Brown Boveri,* 214 F.R.D. 58, 66 (D.Conn.2003) (finding release a "pivotal issue" and denying certification of the class); *see also Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 137 (S.D.N.Y.2003) (finding plaintiff's claims atypical and denying certification of a class when resolution of defense required individual inquiry); *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 153 F.Supp.2d 268, 299 (S.D.N.Y.2001) (denying certification of class when claim for interest called for individualized treatment of defenses), *aff'd,* 320 F.3d 151, 162 (2d Cir.2003).[9] As stated above, the Plaintiffs have not shown that they possess claims typical of a subclass of individuals who signed either General or Lump Sum Releases. If Plaintiffs believe that certification of a narrower class of individuals than they have presently defined is appropriate, they may bring a motion for such certification.

In sum, Plaintiffs' claims fail to satisfy Rule 23(a)'s typicality requirement as a result of the individualized inquiry required to determine whether the General and Lump Sum Releases signed by members of the Class were knowing and voluntary. Plaintiffs have not shown the Releases signed by members of the Class will not threaten to become a central focus of this litigation, overshadowing issues common to the Class.

*4. Adequacy*

■ To satisfy the adequacy requirement of Rule 23(a), a class representative must "possess the same interest and suffer the same injury as the class members." *Amchem Prods.,* 521 U.S. at 625–26, 117 S.Ct. 2231. The adequacy criteria tend to merge with the commonality and typicality requirements, although courts chiefly inquire whether the named plaintiffs' interests are antagonistic to those of the class, and whether class counsel are competent. *See Amchem Prods.,* 521 U.S. at 626 n. 20, 117 S.Ct. 2231; *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Baffa,* 222 F.3d at 60.

■ Plaintiffs whose claims are not subject to defenses based on their execution of General and Lump Sum Releases are not adequate representatives of individuals for whom the validity of these Releases may be a major focus of litigation. Although Plaintiffs' claims may not be antagonistic to those of class members who have signed General and Lump Sum Releases, Plaintiffs do not share the same legal challenges and are not required to litigate the same issues as members of the Class who may have released their claims to additional benefits under ERISA.

While Plaintiffs assert that they are motivated to invalidate the Releases because they are the "one barrier" to Class recovery, the three Plaintiffs' individual interests would be served by a ruling that the Releases are irrelevant as to them since they were not considered during their own administrative processes. In sum, Plaintiffs have not shown that members of the Class who have executed General and Lump Sum Releases but have not exhausted their administrative remedies can ignore the Releases. Therefore, the enforceability of the General and Lump Sum Releases as to many class members, an issue in which the three Plaintiffs may not have any stake, has the potential to become central to this litigation. In sum, Plaintiffs

---

**9.** The cases cited by Plaintiffs are distinguishable. In *Finnan v. L.F. Rothschild & Co.,* 726 F.Supp. 460 (S.D.N.Y.1989), the court certified a class of individuals whose employment was terminated in a mass layoff and who sought relief under the newly-enacted Worker Adjustment and Retraining Notification Act ("WARN"). The court found that the defenses applicable to employees who signed releases were subordinate to

the "far larger common defense" asserted and might be addressed in the future through the creation of a subclass. *Id.* at 465. *Bittinger* discussed the appropriateness of subclasses in a case in which a group of employees signed releases at the same time and under similar circumstances (in order to obtain insurance at the expiration of their collective bargaining agreement). *Bittinger,* 123 F.3d at 879, 884.

have not shown that they are adequate representatives of a Class including individuals subject to a Release defense. *See Presser v. Key Food Stores Cooperative, Inc.*, 218 F.R.D. 53, 59 (E.D.N.Y.2003) (finding that plaintiff who did not sign release could not adequately represent class of release signers bringing WARN Act claims); *Stewart v. Avon Products*, No. CIV. A. 98–4135, 1999 WL 1038338, at *5 (E.D.Pa.1999) (holding that plaintiff bringing a claim based on the termination of a sales incentive program and who did not sign release could not adequately represent class members who signed a release in exchange for a lump sum payment); *Ciarlante v. Brown & Williamson Tobacco Corp.*, Civ. A. No. 95–4646, 1995 WL 764579, at *2 (E.D.Pa.1995) (in a WARN Act case, denying certification of class including employees who had signed releases when named plaintiff had not signed release); *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 700 (S.D.N.Y.1980) (finding that plaintiff in a Warsaw Convention case who did not sign release could not adequately represent class of those who did).[10]

The separate argument by the Defendants regarding the adequacy of the Plaintiffs to represent the Class must be rejected. Defendants contend that Plaintiffs do not possess sufficient understanding of the nature of the action and their role as class representatives. The Supreme Court has "expressly disapproved" of "attacks on the adequacy of a class representative based on the representative's ignorance." *Baffa*, 222 F.3d at 61. Plaintiffs are entitled to rely on "the expertise of counsel." *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288(DLC), 2003 WL 22420467, at *14 (S.D.N.Y. Oct.24, 2003).

In sum, Plaintiffs do not satisfy the threshold criteria of Rule 23(a) because they are not typical or adequate representatives of the Class. Plaintiffs are therefore unable to pursue this litigation as a class action. As shown below, Plaintiffs are further prevented from proceeding to prosecute their claims as representatives of the Class because they do not meet the requirements of either Rules 23(b)(1), (b)(2), or (b)(3).

*Rule 23(b) Requirements*

1. *Rule 23(b)(1)(A)*

 An action may be maintained under Rule 23(b)(1)(A) when the defendant is required by law or by necessity to treat all members of the class alike. *Amchem Prods.*, 521 U.S. at 614, 117 S.Ct. 2231. Plaintiffs' first claim for relief in this action is for individual benefits · under the terms of the Plans and ERISA Section 502(a)(1)(B). Defendants are not obligated to treat alike all employees who bring claims for monetary relief based on the recalculation of their pension benefits. In evaluating individual claims, the Defendants may chose to rely on the Releases signed by absent class members, and if they do rely on the Releases, to conduct an individualized inquiry into the circumstances surrounding the execution of a release to determine whether the employee knowingly and voluntarily waived the right to bring a claim under ERISA. Even if that inquiry were conducted in the context of this litigation without requiring exhaustion, it would entail an individualized inquiry and could result in differentiated rulings. Because Defendants are not obligated to treat all members of the class alike, this action cannot be brought under Rule 23(b)(1)(A).[11]

---

10. The Plaintiffs' reliance on *In re Ikon Office Solutions, Inc. Securities Litigation*, 191 F.R.D. 457 (E.D.Pa.2000), and *Pension Benefit Guaranty Corp. v. LTV Corp.*, 122 F.R.D. 436 (S.D.N.Y. 1988), is misplaced. Neither case involved the impact of releases on certification. The defendants in *In re Ikon* did not dispute the adequacy of the named plaintiffs, who sought to represent a class harmed by plan fiduciaries' improper investment of plan funds. The defense asserted against the typicality of the claims brought by the named plaintiffs was their alleged awareness of the fraud. *In re Ikon*, 191 F.R.D. at 465–66. The defendants in *Pension Benefit Guaranty* did

dispute the adequacy of the named plaintiffs, who sought to compel a bankrupt company to fund restored pension plans. *Pension Benefit Guar.*, 122 F.R.D. at 438. The attacks on adequacy, which were rejected, included arguments such as the difference in interests between retired and current employees. *Id.* at 439.

11. The cases on which Plaintiffs rely are distinguishable. Neither addressed whether releases were an impediment to certification. Each certified a class under Rule 23(b)(1), finding that there was a risk of inconsistent verdicts. The defendants did not contest certification on that

Were this an action solely for declaratory relief concerning the interpretation of Plan language, Plaintiffs could argue for certification under Rule 23(b)(1)(A). Plaintiffs have made no request, however, for certification of a class with respect to the issue of plan language. The present action seeks to certify a Class with claims to monetary recovery which must be determined on an individual basis.[12]

■ Plaintiffs' second claim—that the Defendants breached their fiduciary duty to administer the Plans according to their terms—is not independent of the Complaint's primary claim for recalculation of individual benefits for participants in the Plans.[13] A claim for breach of fiduciary duty "is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 254 (3d Cir. 2002) (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir.1999)). This action may not be maintained under Rule 23(b)(1)(A) on the basis of a derivative claim of breach of fiduciary duty.[14]

### 2. Rule 23(b)(2)

■ To certify a class under Rule 23(b)(2), a court must find that the declaratory relief sought by the plaintiffs predominates over any claims for monetary relief. *Robinson*, 267 F.3d at 164. In assessing whether declaratory or injunctive relief predominates, a court should satisfy itself that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.*

Plaintiffs' predominant claim in this action is for the recovery of over $20,000,000 in pension benefits. Plaintiffs do not seek injunctive relief, as the Plans were amended in 2000 to omit the relevant language concerning Average Compensation. Plaintiffs have not demonstrated that they would seek declaratory relief in the absence of any monetary recovery, or that declaratory relief would be necessary if Plaintiffs were to succeed on their claim for monetary recovery based on the recalculation of benefits under the terms of the Plan.[15] Therefore, this action may not be maintained under Rule 23(b)(2).

ground. In *Babcock v. Computer Assoc. Int'l, Inc.*, 212 F.R.D. 126 (E.D.N.Y.2003), the court found that the "core claims are whether the defendants properly diversified the assets of the Plan and whether they provided alternative investment options." *Id.* at 131. In *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y.1996), the court certified the class after finding that at least 67 class members had exhausted their administrative remedies, and left open the question of whether plaintiffs who did not exhaust could be included in the class. *Id.* at 149. The plaintiffs claimed that the plan fiduciaries had concealed from plan participants the consequences of an early withdrawal from the plan. *Id.* at 146–47.

12. In addition, certification under either Rule 23(b)(1) or Rule 23(b)(2) raises particular concerns because neither provision allows class members the right to opt out. Individuals who signed Releases could be vulnerable to a claim that they breached their severance, separation, or settlement agreements. For this reason, individuals may not wish to attack releases of employment claims, and should be permitted to make this decision on an individual basis. *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 61 (N.D.Ill.1996); *Ciarlante*, 1995 WL 764579, at *2.

13. The only independent violation alleged in the Plaintiffs' second claim for relief is that the Fiduciary Defendants failed to respond to Munley and Chiapparoli's written appeals. This tangential allegation, however, is not grounds for certification of a class. The Plaintiffs have not even attempted to show that the requirements of Rule 23(a) have been met on this limited issue.

14. Plaintiffs rely on four inapposite cases in which courts certified class actions seeking to remedy breaches of fiduciary duty under Rule 23(b)(1). In each of these cases, the plaintiffs primarily sought relief on behalf of the pension fund as a whole. *Gruby v. Brady*, 838 F.Supp. 820, 828 (S.D.N.Y.1993) (certifying class under Rule 23(b)(1)(B)); *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D.Ga.1991) (same); *In re Ikon*, 191 F.R.D. at 466; *Koch v. Dwyer*, No. 98 Civ. 5519, 2001 WL 289972, at *5 (S.D.N.Y. Mar.23, 2001) (certifying class under Rule 23(b)(1)(B)).

15. Plaintiffs do not cite any cases in the Second Circuit in support of their argument for certification under Rule 23(b)(2), nor do they address standard set forth *Robinson*, 267 F.3d at 164.

3. *Rule 23(b)(3)*

(i) *Predominance*

A class may only be certified under Rule 23(b)(3) if common questions of law or fact predominate over questions solely affecting individual members of the class. Rule 23(b)(3), Fed.R.Civ.P. The predominance inquiry is more stringent than the commonality requirement of Rule 23(a), and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623, 624, 117 S.Ct. 2231. A common course of conduct by the defendant is insufficient to establish predominance. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir.2002). Rather, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney*, 280 F.3d at 136 (citation omitted).

As already discussed, a determination of whether an individual plaintiff has waived his right to recover benefits under ERISA by signing a General or Lump Sum Release necessitates individualized inquiry into the circumstances surrounding the execution of the Release. If absent class members are required to exhaust their administrative remedies before participating in this class action, then there may be lengthy delays to permit that exhaustion, and individualized review of the administrative record created by each claim for additional benefits to determine whether Defendants have waived their right to rely on the Releases as a basis for denying benefits, or where they have relied on the Releases in making that decision, whether they abused their discretion in denying the claim. If it were appropriate to consider Releases executed by absent class members in this litigation without the exhaustion of administrative remedies, then the dispute over the enforceability of the Releases would also threaten to predominate over questions concerning the interpretation of Plan language that are common to the Class. In either circumstance, evaluation of the Releases raises questions of law and fact that are not shared by the Class and the named Plaintiffs, and requires a case-by-case factual inquiry unique to many absent class members. These legal and factual issues preclude a finding that common issues will predominate in this litigation.

Plaintiffs misstate the applicable standard when they argue that certification under Rule 23(b)(3) is appropriate when issues of law or fact common to the Class represent a significant aspect of the litigation. Questions common to the Class must predominate in order to allow certification under Rule 23(b)(3).[16]

(ii) *Superiority*

Under Rule 23(b)(3), plaintiffs are also required to demonstrate that "a class action is

---

Plaintiffs rely primarily on *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir.2003), in which the Seventh Circuit Court of Appeals held that a class could be maintained under Rule 23(b)(2) if the declaratory relief sought was a prelude to a request for monetary damages. *Id.* at 763. Plaintiffs' reliance is misplaced to the extent that the holding in *Berger* conflicts with the requirements established by the Second Circuit in *Robinson*.

**16.** Plaintiffs cite two cases in which a district court certified a class under Rule 23(b)(3) in an action for recalculation of benefits under ERISA. Neither suggests that Rule 23(b)(3) certification is appropriate here. In *Babcock*, the court found that the core issues of the litigation concerned the defendants' failure to diversify the plan's assets, an issue of concern for the plan as a whole. *Babcock*, 212 F.R.D. at 132. In *Gaspar*, the court certified a class of eighteen workers laid off during a single downsizing who alleged that they were mislead as to their choice of benefit plans. The plaintiffs were each required to execute releases at that time. *Gaspar*, 167 F.R.D. at 54. The commonality of the circumstances surrounding execution of the releases distinguishes *Gaspar* from this litigation.

The remaining two cases on which Plaintiffs rely are similarly unhelpful to them. As already discussed, *Bittinger* involved releases signed in connection with a single event. *Bittinger*, 123 F.3d at 879. Moreover, it is not clear that certification of the class was pursuant to Rule 23(b)(3): there is no discussion of either the predominance or superiority requirements, and the court found that the request for monetary relief was incidental to the request for a declaration. *Id.* at 883. *Finnan*, relied on by Plaintiffs at oral argument, certified a claim for backpay and benefits under WARN following a mass dismissal of employees. *Finnan*, 726 F.Supp. at 462.

superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), Fed.R.Civ.P. Among the factors that a court should consider are "the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3), Fed.R.Civ.P.; *Amchem Prods.*, 521 U.S. at 615–16, 117 S.Ct. 2231.

 Plaintiffs have not shown that it will be unnecessary to conduct highly individualized, fact-intensive inquiries into the circumstances surrounding the execution of General and Lump Sum Releases by absent class members in order to determine whether these individuals are entitled to recover under ERISA, raising serious concerns about the manageability of the action. A class action is not suited to litigation so heavily dependent on questions requiring individualized proof. Given the significance of the General and Lump Sum Releases executed by members of the Class and the fact-intensive inquiry required to analyze the Releases' enforceability, a class action is neither a superior nor an efficient means of resolving this controversy.

### Conclusion

The Rule 23(a) and (b) requirements for certification of a class action have not been met. The Plaintiffs' motion for certification is denied.

SO ORDERED: