Barbara J. LAUDER, Plaintiff–Appellee–Cross–Appellant,

v.

FIRST UNUM LIFE INSURANCE COMPANY, Defendant–Appellant–Cross–Appellee,

and

Coach Stores, Inc., Defendant.

Docket Nos. 01–7499(L), 01–7591(XAP).

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 2001.

Decided March 12, 2002.

---

376

Evan L. Gordon, New York, NY; Law Office of Evan L. Gordon, of counsel, for Defendant–Appellant–Cross–Appellee.

Peter G. Eikenberry, New York, NY; Lisa Brubach, on the brief, for Plaintiff–Appellee–Cross–Appellant.

Before OAKES, KEARSE and CALABRESI, Circuit Judges.

OAKES, Senior Circuit Judge.

Barbara Lauder sued First UNUM Life Insurance Company ("First UNUM") under ERISA for wrongfully denying her disability benefits on the basis that she was not covered by her employer's policy at the time of her injury. The United States District Court for the Southern District of New York, Barrington D. Parker, Jr., *Judge,* held that Lauder was covered on the date of her injury and that First UNUM had waived its right to dispute whether Lauder was in fact disabled. The district court awarded as damages disability benefits in the amount of $95,234 and also awarded attorney fees. Although we agree that Lauder was covered under the policy and that First UNUM cannot now challenge her claim of disability, we disagree with the district court's calculation of damages and award of attorney fees. We therefore affirm on coverage and waiver, and vacate and remand the question of attorney fees and the damages calculation.

## BACKGROUND

Lauder was employed for many years by Coach Stores, Inc. Coach carried a group long term disability policy issued by First UNUM which covered Lauder while she was an employee. Lauder left her position at Coach pursuant to a termination agreement dated November 15, 1996. The termination agreement stated that Lauder's employment "shall terminate" effective November 1, 1996.

Late in the afternoon of November 1, 1996, Lauder slipped and fell in the parking lot of a convenience store. On January 21, 1998, she applied to First UNUM for

disability benefits. In support of her application, she submitted an Employee's Statement on which she stated that the last day she worked before the disability was October 31, 1996, and that November 1, 1996, was the date that she was first unable to work. The Employer's Statement submitted by Coach stated that October 31, 1996, was Lauder's last day of work. Lauder also submitted a Physician's Statement, as well as a letter from her doctor, which indicated that she had cervical instability with a limited range of motion to her neck and that no improvement of her condition was expected. Additionally, Lauder completed a Release of Medical Information form.

In response to Lauder's application, First UNUM called her in early February 1998 and questioned her about her medical condition. First UNUM also called Coach's benefits manager in an attempt to find out the date on which Lauder last worked. First UNUM made a request for medical records, but then canceled the request a few days later on the ground that it did not want to incur the expense of pursuing the matter. On February 10, 1998, First UNUM denied Lauder's request for disability benefits, stating that her coverage was in effect through October 31, 1996, and that she was no longer in the eligible class of employees when her accident happened on November 1, 1996.

Lauder appealed the decision, attaching a letter from Coach dated December 5, 1996, that outlined her benefits after termination. The letter stated that her last day worked was November 1, 1996, and that her long term disability coverage would terminate at the end of that month. Coach also appealed the decision to deny benefits in an April 24, 1998, letter, which stated that November 1, 1996, was Lauder's termination date.

The appeal unit of First UNUM upheld the decision to deny benefits on March 26, 1998, stating that:

> [o]ur review of the documents contained in your claim file indicate that you last worked at Coach on October 31, 1996.... While we do understand that your employment separation with Coach was not effective until November 1, 1996, your coverage for the purposes of your long term disability insurance is in effect only if you meet the "active employment" requirements found in the policy.

Lauder subsequently proceeded to file suit.

After a bench trial, the district court found in January 2000 that Lauder was an active employee of Coach on November 1, 1996, and that the administrative record established that First UNUM had ample evidence of this fact. The district court further found that First UNUM had before it preliminary information concerning Lauder's disability, but chose not to pursue an inquiry into the validity of her claim for administrative reasons. Based on these factual findings, the district court concluded that Lauder had adequately demonstrated to First UNUM that she was within the eligible class of employees on the date of her injury. Additionally, the district court held that First UNUM had waived its argument that Lauder was not disabled, and that Lauder consequently had established her initial entitlement to benefits. The district court then proceeded to award attorney fees to Lauder.

In a Final Judgment dated April 6, 2001, the district court awarded Lauder damages in the amount of $95,234, representing disability benefit payments from the date of injury to the date of the Final Judgment. It also awarded Lauder attorney fees in the amount of $134,317. This appeal followed.

## DISCUSSION

First UNUM makes the following arguments on appeal: (1) that the district court erred in concluding that Lauder was covered by Coach's policy at the time of her injury; (2) that the district court erred in applying the doctrine of waiver to Lauder's ERISA claim; (3) that it was an abuse of the district court's discretion to award attorney fees to Lauder; and (4) that the district court erred in calculating, without explanation of its method, the disability benefit amount it found was due as damages to Lauder. Lauder, who has cross-appealed on the issue of damages, agrees with First UNUM that the figure arrived at by the district court is incorrect and asks that this Court perform its own benefits calculation. We will address these matters in turn.

### I.  *Standards of Review*

At the outset, we address the appropriate standards of review that apply to the claims in this case. With respect to the denial of benefits to Lauder, the district court applied the ERISA standard set forth in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Supreme Court stated that:

> a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S.Ct. 948. First UNUM has not taken issue with the district court's conclusion that Coach's plan did not expressly grant First UNUM such authority and that the *de novo* standard therefore applied. We agree that the correct standard of review was used below, and apply the same standard to our review of the district court's legal conclusions regarding the ERISA claim. We review the district court's findings of fact for clear error. *See Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996).

With respect to the district court's decision to award attorney fees, we review for abuse of discretion. *See Salovaara v. Eckert*, 222 F.3d 19, 27 (2d Cir. 2000). As we noted there, although the decision to award attorney fees " 'is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion.' " *Id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999)). Finally, whether the court correctly calculated damages is a question of law that we review *de novo*. *See Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 286 (2d Cir.2000).

### II.  *Coverage*

First UNUM claims that Lauder was not covered by Coach's long term disability policy on November 1, 1996, the date of her injury. In essence, First UNUM's argument is that because Lauder was terminated that day, her active employment ended when she walked out her employer's door for the last time. Thus, First UNUM asserts, Lauder was not covered by the policy when she later slipped and fell in the convenience store parking lot.

We agree with the conclusion of the district court that Lauder was covered by Coach's policy. There is sufficient evidence in the record to demonstrate that both Coach and Lauder considered November 1, 1996, to be her last day of active employment. This evidence includes Lauder's testimony that she worked that day as well as her termination agreement, Coach's December 5, 1996, letter to Lauder regarding her benefits, and Coach's April 24, 1998, letter to First UNUM, all

of which stated that November 1 was Lauder's last day of work. Additionally, we note that Coach paid premiums to First UNUM to cover Lauder until the end of November, and Coach considered her insured through the end of that month.

We do not credit First UNUM's argument that Lauder was not actively employed, and therefore ineligible for coverage, because her accident occurred after she had left Coach on her termination date. According to First UNUM's policy, Lauder was actively employed if she was working for Coach on a full-time basis for a minimum number of 30 hours per week. First UNUM has not argued that Lauder worked less than 30 hours, or was not a full-time employee, in the week ending on Friday, November 1, 1996. We do not think it twists logic to conclude that Lauder's coverage continued through the whole of her last day of active employment, rather than ending when she walked out of Coach's door for the last time. Indeed, First UNUM's proposed coverage cut-off point seems the less reasonable construction of the policy, albeit the one most favorable to it.

We find that the district court's findings of fact with respect to Lauder's coverage were not clearly erroneous, and hold as a matter of law that Lauder was covered by the policy at the time of her injury.

### III. *Waiver*

■ The central issue raised by this case is whether First UNUM should be deemed to have waived its defense of lack of disability because it chose not to pursue it, relying instead on the defense of lack of coverage. The district court held that because First UNUM had documentation of Lauder's disability, but for its own internal convenience did not investigate her claim, First UNUM waived the right to contest whether Lauder was in fact disabled at the

time of her application for benefits. First UNUM challenges this holding, arguing that it was error to apply the doctrine of waiver to an ERISA claim.

At the time of the district court's ruling, this Court had not yet decided the ERISA benefits case of *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279 (2d Cir.2000). The district court therefore had no guidance from the Second Circuit on the question whether the common law principles of waiver apply in the ERISA context. However, applying the ruling in *Juliano* and based on the facts of Lauder's case, we find that the district court correctly decided that First UNUM waived the defense of lack of disability.

We start our inquiry into this issue with our holding in *Juliano*. There, in analyzing whether an HMO's failure to assert medical necessity as a ground for denial of the insured's claim precluded it as a defense in the ensuing lawsuit, we recognized that "under the law applicable to insurance policies, an insurer may be barred from raising defenses not asserted in communications to the insured denying coverage." *Id.* at 288 (citing *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir.1991)). We chose, however, not to impose this rule in *Juliano* for two reasons. First, we found that medical necessity, which the Julianos had failed to prove, was a required element for coverage and thus could not be waived. *See id.* (citing *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980)). Second, we were concerned with the ERISA implications of such a rule, namely, that if:

plan administrators lost the ability to assert in court reasons for declining coverage that were not asserted at the time reimbursement was declined, [ERISA] notices would threaten to become mean-

ingless catalogs of every conceivable reason that the cost in question might not be reimbursable, instead of candid statements as to why the administrator ... thinks reimbursement is unwarranted.

*Id.* We therefore declined to hold that the defense of medical necessity had been waived by the HMO.

For our purposes here, it is important to note that *Juliano* did not hold that the doctrine of waiver never applies to an ERISA claim. Rather, the court acknowledged that an insurer could waive certain defenses, but that waiver had not occurred in that particular case. Other circuits have similarly left open the larger question of whether waiver might apply in the ERISA context while concluding that it did not in the specific case. *See Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1348 (11th Cir.1994); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 650 (7th Cir.1993). Of the circuits that have addressed the issue, only the Fifth Circuit has definitively held that waiver is a viable argument under ERISA. *See Pitts v. Am. Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991). The Fourth Circuit has reached the opposite conclusion, holding that "the federal common law under ERISA ... does not incorporate the principles of waiver and estoppel." *White v. Provident Life & Accident Ins. Co.,* 114 F.3d 26, 29 (4th Cir.1997); *see also Crull v. GEM Ins. Co.,* 58 F.3d 1386, 1390–91 (9th Cir.1995) (holding that state law claims of waiver are preempted under ERISA).

Because *Juliano* left open the waiver issue, it does not dictate the result in the case at bar. Rather, it directs us to conduct a case-specific analysis informed by its reasoning. As indicated above, our analysis leads us to the conclusion that waiver applies in the particular situation presented by this ERISA case.

In *Juliano,* we found that medical necessity was a required element of the policy under which the Julianos sought reimbursement, and that the Julianos had not proven their case on that point. 221 F.3d at 287–88. Looking to the state law case of *Albert J. Schiff Assocs.* for guidance, we held that such a required element was analogous to whether underlying coverage existed at all, and thus could not be waived. *Id.* at 288. In *Albert J. Schiff Assocs.,* the court made a distinction between policy conditions, which could be waived by the insurer's conduct, and the parameters of the underlying coverage. 435 N.Y.S.2d at 975, 417 N.E.2d 84. The court held that a claim of waiver could not be used to expand the policy so that the insured "extend[ed] its coverage to more than it originally bargained." *Id.* at 974–75. In the Julianos' case, to deem the defense of medical necessity to be waived, and thereby allow the Julianos to recover without proving an essential element of their claim under the policy, would improperly expand the coverage of that policy.

Lauder's case does not raise the same concern. Waiver here would not create coverage where none would otherwise exist; rather, Lauder's disability is exactly the type contemplated by the policy. In support of her claim, Lauder gave First UNUM evidence in the form of a Physician's Statement and an accompanying doctor's letter. She also submitted a Release of Medical Information so that First UNUM could pursue an investigation of her disability. First UNUM, of course, chose not to do so. Therefore, what First UNUM waived by its conduct was its right to *investigate;* the underlying disability itself was established. By giving First UNUM all the information she had to prove her case, Lauder met her obligation under the policy. Any complaints First UNUM now has about the sufficiency of

such evidence are a direct result of its decision not to investigate Lauder's claim.

Because finding waiver in this case would not expand the coverage bargained for by First UNUM when it contracted with Coach, we believe Lauder's claim is distinguishable from the Julianos', and that the distinction set forth in *Albert J. Schiff Assocs.* does not apply here. Instead, the waiver principle articulated in *AMRO Realty,* and recognized in *Juliano,* seems to us the better fit:

> [A]n insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.

936 F.2d at 1431. First UNUM knew of Lauder's claim of disability, chose not to investigate it, and chose not to challenge it. It therefore waived its right to rely on lack of disability as a defense to Lauder's claim. *See Pitts,* 931 F.2d at 357 (finding waiver in ERISA case after "focus[ing] on the unilateral action of the insurer in failing to raise at the outset a known defense to the claim"); *see also Glass,* 33 F.3d at 1348 (suggesting that waiver in an ERISA case would have to be proven by evidence of "intentional relinquishment of a known right").

Additionally, the second reason we gave for our holding in *Juliano*—that permitting waiver posed the risk of turning ERISA notices into "meaningless catalogs" of all possible bases for denial—is not implicated by a case like this. First UNUM was not in the position of having to imagine every conceivable basis for denying Lauder's claim; it had all her evidence of her disability before it, and could easily have evaluated that evidence to assert a

lack of disability defense. In other words, such a defense was not hypothetical here. Requiring First UNUM to assert the defense would lead to exactly the type of "meaningful dialogue[ ] between plan administrators and plan members" that *Juliano* envisioned. 221 F.3d at 288.

In contrast to *Juliano,* this case raises the concern that plan administrators like First UNUM will try the easiest and least expensive means of denying a claim while holding in reserve another, perhaps stronger, defense should the first one fail. In light of ERISA's remedial purpose of protecting plan beneficiaries, we are unwilling to endorse manipulative strategies that attempt to take advantage of beneficiaries in this manner. Indeed, our point in *Juliano* was that "candid" statements by the insurer should be encouraged. *Id.* First UNUM here chose to proceed on the questionable—but cheapest—argument of lack of coverage when it could easily have investigated the merits of Lauder's claim. It should not now get another proverbial bite at the apple.

Our analysis of the facts presented here leads us to conclude that principles of waiver are appropriately applied in this case. Because we do not consider this the appropriate set of facts on which to create a federal common law doctrine of waiver in the ERISA context, we limit our holding to the circumstances of this particular claim.

## IV. *Attorney Fees and Damages*

In considering whether the district court abused its discretion in awarding attorney fees and costs to Lauder, we rely on *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869 (2d Cir.1987). We recognized there that a five-factor test applies to the decision to award fees in an ERISA action,[1] and that the district court

---

1. 29 U.S.C. § 1132(g)(1) (2001) provides that

in an ERISA action, "the court in its discre-

abuses its discretion if it misapplies the test. *Id.* at 871; *see also Salovaara,* 222 F.3d at 27–29.

▮ At its hearing on attorney fees, the district court correctly identified the *Chambless* factors, which are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless,* 815 F.2d at 871. The district court stated that, with respect to the first factor, it did not believe that First UNUM's rejection of Lauder's claim "was proper under the policy or under applicable law." The court then found that First UNUM could satisfy an award of fees and that such an award "would have a not insignificant deterrent effect." With respect to the fourth factor, the court found that none of First UNUM's positions in the litigation were "frivolous or improper or anything of that sort." Finally, the court stated that no common benefit was conferred on a group because this was a single action. Weighing the factors, the district court concluded that an award of attorney fees to Lauder was warranted.

▮ While we are unwilling to find that the district court abused its discretion in reaching this conclusion, we note that its analysis of the *Chambless* factors resulted in only one factor that weighed against First UNUM, namely, the lack of merit in its position on coverage. The findings on the second and third factors seem unremarkable, and therefore neutral, to us, especially because the district court did

not specify what conduct it thought would be deterred by the award. It also seems that the court confused the first and fourth factors when it found with respect to the latter that First UNUM had made no frivolous or improper arguments. This suggests that while the court found First UNUM's position without merit, it did not find its actions were taken in bad faith. This lack of bad faith coupled with the court's finding of a lack of impact on a larger group—the fifth factor—make two factors in First UNUM's favor. Although we agree with the district court that First UNUM took the wrong position on coverage, it is not clear that that position was so egregiously wrong as to outweigh the other factors under *Chambless.*

We recognize that "the degree of deference owed to a district court in these matters makes this case a close one," *Salovaara,* 222 F.3d at 29. In light of the apparent errors in the balancing process, however, we believe the best course is to vacate the district court's award of attorney fees and to remand the question to the court for further consideration.

▮ Turning to the district court's calculation of the damages suffered by Lauder, we note that the figure arrived at by the court—$95,234—was ordered without any explanation as to the method used to reach it. We are therefore unable to review whether the district court's calculation method was correct. Moreover, both parties assert that the calculation is wrong and should be set aside. Lauder thinks the figure is too low and argues that this Court should independently calculate the damages due to her, using the information supplied in the record. In contrast, First UNUM thinks it a usurpation of its role as claims administrator for any court to cal-

---

tion may allow a reasonable attorney's fee and costs of action to either party."

culate the figure, and urges us to remand the calculation to First UNUM.

We decline Lauder's invitation to calculate her damages, believing this to be a task better suited to the district court. We also decline First UNUM's invitation to turn the calculation over to it, as the district court will have all the necessary information from the policy, and from hearings on this issue, to calculate Lauder's damages accurately. Thus, we vacate the award of damages made in this case and remand the issue of damages to the district court for further proceedings.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court on the merits, and vacate and remand on attorney fees and the calculation of damages.