15-2322-cv
*Arnone v. Aetna Life Ins. Co.*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: August 15, 2016   Decided: June 22, 2017)

Docket No. 15-2322

SALVATORE ARNONE,

*Plaintiff-Counter-Defendant-Appellant*,

–v.–

AETNA LIFE INSURANCE COMPANY,

*Defendant-Counter-Claimant-Appellee.*

B e f o r e :

POOLER, LYNCH, and CARNEY, *Circuit Judges*.

Appellant Salvatore Arnone, a New York resident, appeals from part of a June 30, 2015 judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*), denying his motion for summary judgment and granting the summary judgment motion filed by Appellee Aetna Life Insurance Company, an insurer registered to do business in New York. After an accident, Arnone became disabled, entitling him to long-term disability benefits under a benefit plan created by his employer, administered and insured by Aetna, and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (the "Plan"). Arnone began collecting disability benefits after the accident; he also sued in New York state court those allegedly responsible for his injuries and settled that suit. Following the settlement, Aetna reduced Arnone's Plan benefits, on the theory that the settlement

payment duplicated sums otherwise due Arnone under the Plan. We conclude that Aetna's determination contravened New York General Obligations Law § 5-335, which provides, "When a person settles a claim . . . for personal injuries . . . it shall be conclusively presumed that the settlement does not include any compensation for . . . cost[s] . . . obligated to be paid or reimbursed by an insurer." N.Y. Gen. Oblig. Law § 5-335(a). We also conclude that neither ERISA nor the Plan's choice of law provision (which identifies Connecticut law as controlling the Plan's construction) blocks application of section 5-335. Thus, as to the issue of Arnone's entitlement to the past and ongoing benefits that Aetna has not paid on the ground that they are duplicative of Arnone's personal injury settlement, the District Court erred in granting Aetna's motion for summary judgment and denying Arnone's motion for summary judgment. Arnone is entitled to the unpaid benefits. For these reasons, the District Court's judgment is REVERSED IN PART, as to that issue, and the cause is REMANDED for the entry of a revised judgment consistent with this opinion.

REVERSED IN PART AND REMANDED.

———————

FRANKLIN P. SOLOMON, Solomon Law Firm, LLC, Cherry Hill, NJ, *for Salvatore Arnone*.

MICHAEL H. BERNSTEIN (Matthew P. Mazzola, *on the brief*), Sedgwick LLP, New York, NY, *for Aetna Life Insurance Company*.

———————

SUSAN L. CARNEY, *Circuit Judge*:

Section 5-335 of the New York General Obligations Law provides that personal injury settlements "shall be conclusively presumed" not to include "any compensation for the cost of health care services, loss of earnings or other economic loss[es]" that "have been or are obligated to be paid or reimbursed by an insurer." N.Y. Gen. Oblig. Law § 5-335(a). When section 5-335 is applied, it effectively bars an insurer from reducing the benefits owed to an insured by the amounts the insured receives from a

personal injury settlement.[1] In this appeal, we consider whether section 5-335 applies to payments made in settlement of a personal injury suit brought in a New York court by a New York resident injured in New York, even though the governing benefit plan provides that the law of a state other than New York controls the plan's construction.

In brief summary, appellant Salvatore Arnone, a New York resident, sustained serious injuries while working in New York at the site of a customer of his employer. He filed for, and received, long-term disability benefits related to the injury through his employer's benefit plan (the "Plan"), which was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Aetna Life Insurance Company ("Aetna"), a Connecticut company and national insurer that is registered to do business in New York, is both the Plan's insurer and its claims administrator.

Arnone brought a personal injury suit in New York state court against his employer's customer and settled the suit for $850,000. In light of the settlement, Aetna reduced Arnone's disability benefits by a portion of the settlement proceeds. Taking the position that the settlement included compensation duplicative of Arnone's disability benefits and citing a Plan provision regarding offsetting payments from other sources, Aetna maintained that the Plan permitted it to reduce its benefit payment obligation.

Arnone sued Aetna to recover the offset benefits. In moving for summary judgment, he invoked section 5-335. The District Court (Feuerstein, *J.*) denied Arnone's motion, reasoning that section 5-335 had no bearing on the amount of Arnone's benefit entitlement in light of the Plan's choice of law provision designating Connecticut law as controlling the Plan's construction. Arnone appeals this determination. Aetna defends the District Court's reasoning, and further argues that ERISA preempts section 5-335 as

---

[1] We note that throughout this opinion we do not use the terms "insured" and "insurer" broadly to refer to *all* kinds of insureds and insurers. Rather, we use those terms with reference to the positions functionally occupied by Arnone and Aetna in this case.

an impermissible state regulation of the Plan. Aetna also contends that Arnone forfeited his right to invoke section 5-335 in this lawsuit by failing to rely on it during Aetna's claims administration process.

We conclude that, when applied, section 5-335 prohibits Aetna's reduction in Arnone's disability benefits. We further decide that neither ERISA's preemptive force nor the Plan's choice of law provision compels a different conclusion. We also reject Aetna's issue forfeiture argument. Thus, as to Arnone's entitlement to the past and ongoing benefits that Aetna has withheld on the ground that they are duplicative of Arnone's personal injury settlement, the District Court erred in granting Aetna's motion for summary judgment and denying Arnone's motion for summary judgment. Arnone is entitled to the unpaid benefits. For these reasons, the District Court's judgment is REVERSED IN PART, as to that issue, and the cause is REMANDED for the entry of a revised judgment consistent with this opinion.

## BACKGROUND

The facts set forth here are undisputed. Arnone is a former account executive for Konica Minolta Business Solutions U.S.A., Inc. ("Konica") who worked out of Konica's office in Melville, New York. In June 2009, Arnone was working at the site of one of Konica's customers, Meopta U.S.A., Inc. ("Meopta"), in Hauppauge, New York, when he slipped in a puddle of water and fell about four feet, hitting his head, lower back, and neck on a cinder block wall. Arnone reported that, as a result of the fall, he experienced pain, limitations in the range of motion in his cervical and lumbar spine, radiculopathy,[2] and difficulty sitting or standing for prolonged periods. Several months after the fall, Arnone returned to work, but in December 2009 he stopped working—this time permanently—because of his injuries.

---

[2] Radiculopathy is a disorder of the spinal nerve roots. *See* Stedman's Medical Dictionary (28th ed. 2006).

4

Konica had established for its employees a group long-term disability plan (the "Plan") that qualified as an employee welfare benefit plan under ERISA. Konica had also purchased from Aetna a group insurance policy designed to allow Konica to fund benefits under the Plan and engaged Aetna as the Plan's claims administrator. Arnone was a Plan participant.

Under ERISA, "benefits plans must be 'established and maintained pursuant to a written instrument.'" *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (quoting 29 U.S.C. § 1102 (a)(1)). We understand the parties to agree that the written terms of the Plan comprise the insurance policy issued by Aetna to Konica, Joint App'x ("J.A.") 91-123, the "Booklet" apparently issued to employees as their "Certificate of Coverage," J.A. 124-42, and the "Summary of Coverage" document accompanying it, J.A. 143-52. We accept the parties' characterization for present purposes. *See, e.g.*, *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 573 (2d Cir. 2006) (determining that the terms of a plan were expressed in an employer's plan description and an insurer's policy materials); *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 990-91 (7th Cir. 2005) (collecting cases and holding that an employer's disability insurance policy, together with certificates issued to employees, constituted ERISA plan documents).

The Plan provides that the amount of a participant's long-term disability benefit payment is a function of, among other factors, the number that is 60 percent of the individual's "monthly predisability earnings," reduced by "other income benefits" due from other sources. J.A. 125, 145. It defines "other income benefits" to include "[d]isability, retirement, or unemployment benefits required or provided for under any law of a government." J.A. 127. This category encompasses, for example:

> disability benefits under any state or federal workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: loss of past and future wages; impaired earning capacity;

5

lessened ability to compete in the open labor market; any degree of permanent impairment; and any degree of loss of bodily function or capacity.

J.A. 127-28. The list of "other income benefits" also includes "[d]isability payments which result from the act or omission of any person whose action caused [the Plan participant's] disability." J.A. 128. In contrast, the term "other income benefits" does *not* include disability benefits being received from particular enumerated sources before the date of disability under the Plan, or from "individual disability income policies" or "severance pay." J.A. 129.

In August 2009, following his injury, Arnone filed a request for disability benefits with Aetna. In December, he submitted additional paperwork in support of his request. By letter dated March 12, 2010, Aetna approved Arnone's claim for disability benefits effective retroactively to December 2009 (when Arnone became eligible for benefits). It calculated 60 percent of his monthly pre-disability earnings to be $4,881. (In discussing dollar amounts, we round to the nearest dollar.)

Aetna reduced Arnone's disability benefits, however, in accordance with the Plan's "other income benefits" provision. By the time Aetna approved Arnone's claim, Arnone had already begun to receive New York workers' compensation benefits in the amount of $2,383 per month. As of March 12, 2010, then, Aetna calculated that Arnone was due disability benefits of $2,498 per month—$4,881 (60 percent of his pre-disability earnings) less $2,383 (his monthly workers' compensation benefits).

An additional reduction for "other income benefits" followed. In April 2011, the Social Security Administration awarded Arnone Social Security Disability Income ("SSDI") benefits totaling $2,414 per month. After offsetting these benefits as well, Aetna informed Arnone that he was due $114 per month under the Plan. This sum

represented the Plan's guaranteed floor—its minimum monthly disability benefit for Plan participants.

Meanwhile, in November 2009, Arnone filed a personal injury suit against Meopta in New York state court, seeking compensation for his injuries. Roughly three years later, in late 2012, Arnone settled that suit for a lump-sum payment of $850,000. In return for the payment, he executed a sweeping general release of his claims against Meopta (the "Release").

After Arnone executed the Release, Konica's workers' compensation insurance carrier exercised its statutory right to impose a lien against the proceeds of the settlement, requiring Arnone to reimburse the carrier for the workers' compensation benefits paid him. *See* N.Y. Workers' Comp. Law § 29(1); N.Y. Gen. Oblig. Law § 5-335(c) (excepting workers' compensation benefits from the general rule that a personal injury settlement "shall be conclusively presumed" not to include "any compensation for the cost of health care services, loss of earnings or other economic loss[es]" that "have been or are obligated to be paid or reimbursed by an insurer"). Arnone then wrote to Aetna to obtain a redetermination of his disability benefits. He requested that Aetna pay him the sums Aetna had previously withheld as "other income benefits" on the understanding that Arnone was receiving those sums in the form of workers' compensation benefits.[3]

In response, Aetna requested an "itemized list of liens that were paid out of [Arnone's] settlement for medical bills, income replacement, attorney fees, etc." J.A. 205.

---

[3] In October 2012, Arnone also notified Aetna that his workers' compensation benefits had been discontinued in August 2012. Aetna responded with an estimate that, once the workers' compensation offset was removed, it would pay Arnone monthly disability benefits of $1261, but it requested further documentation of the discontinuation. The record is unclear as to whether Arnone ever provided sufficient documentation of the discontinuation or received any monthly payments of $1261, because soon after this exchange, Aetna and Arnone began disputing the impact of Arnone's personal injury settlement on his disability benefits.

During the ensuing back-and-forth with Aetna, Arnone's counsel made no mention of New York General Obligations Law § 5-335, but represented (according to an Aetna employee's notes) that the remaining portion of the settlement was "all for pain and suffering" and that "no wage replacement was included" because "[a]ll wage replacement that was paid by [the workers' compensation] carrier was repaid to [the workers' compensation] carrier." J.A. 182. In April 2013, Aetna requested a copy of the settlement agreement, cautioning in internal correspondence that it could not "go by what [Arnone's] attorney is telling [it] . . . regarding the pain and suffering." J.A. 181.

In May 2013, Aetna issued its recalculation of Arnone's benefits. Aetna determined that Arnone netted $551,100 from the personal injury suit: the settlement amount of $850,000, less attorney's fees and litigation costs and a portion of the funds repaid to the workers' compensation insurance carrier. Because the Release was general and did not designate whether or how the settlement sum reflected compensation for pain and suffering, medical expenses, lost income, or other considerations, Aetna applied the Plan's so-called "50% Provision" in its recalculation. That provision reads:

> That part of the lump sum or periodic payment that is *for disability* will be counted [as an "other income benefit" offsetting benefits otherwise due], even if it is not specifically apportioned or identified as such. If there is no proof acceptable to Aetna as to what that part reasonably is, 50% will be deemed to be for disability.

J.A. 129 (emphasis added).

Relying on this language, Aetna concluded that the personal injury settlement reduced its obligation to Arnone by $275,550 (50 percent of the $551,100 net settlement amount paid by Meopta to Arnone). It prorated this sum, offsetting $1,791 per month retroactively from November 2012 (the date of the settlement, as Aetna determined it) to May 2013 (the date of Aetna's recalculation), and prospectively until August 2025 (the

8

date when Arnone's disability benefit period under the Plan would end). Combined with the existing offsets, Arnone's disability benefits going forward from May 2013 were thus again, in Aetna's estimation, reduced to the $114 monthly minimum.

Arnone's counsel turned to Aetna's internal appeal process to challenge Aetna's recalculation. In a June 2013 letter, he argued that, because the remainder of the lump-sum settlement "was not for disability, but for pain and suffering only, no such portion should be deducted from [Arnone's] monthly benefit." J.A. 184. In a July 2013 letter, Aetna notified Arnone that, after an internal administrative review, it had upheld its original decision.

In August 2013, Arnone filed the instant action against Aetna in New York state court, seeking, among other relief, an award of the disability benefits that Aetna withheld in light of the settlement. As relevant to this appeal, Arnone asserted his entitlement to those unpaid benefits under section 502(a)(1)(B) of ERISA, which empowers a plan participant to sue "to recover benefits due to him under the terms of his plan" and "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In September 2013, Aetna removed the action to the United States District Court for the Eastern District of New York. It also brought a counterclaim against Arnone for $40,125, representing the amount of disability benefits that, in its view, it had overpaid to Arnone from December 2009 through April 2011.[4]

---

[4] Aetna originally counterclaimed for an alleged overpayment of $61,540, but in its motion for summary judgment, Aetna clarified that the actual amount of overpayment was $40,125. These calculations were premised on the federal government's 2011 payment of Social Security benefits to Arnone—a retroactive payment representing the total Social Security benefits he should have been receiving since December 2009. Because the start of Aetna's disability payments predated the start of the retroactive Social Security period, Aetna had already paid him this amount without offset. Aetna thus treated the retroactive Social Security award as "other income benefits" and offset this award against its payment obligation.

Both Arnone and Aetna moved for summary judgment. Arnone argued that section 5-335 precluded Aetna from offsetting half of his net settlement amount against his disability benefits. The Plan's 50% Provision, by its text, allows offset only of the portion of the settlement that is "for disability," Arnone contended. He pointed out the 50% Provision's qualification: that only "[i]f there is no proof acceptable to Aetna as to what part reasonably is . . . for disability," will 50 percent of the total sum be "deemed" to be such compensation. J.A. 129. New York law as stated in section 5-335 provides, however, that personal injury settlements "shall be conclusively presumed" not to include "any compensation for the cost of health care services, loss of earnings or other economic loss[es]" that "have been or are obligated to be paid or reimbursed by an insurer." N.Y. Gen. Oblig. Law § 5-335. Accordingly, Arnone argued, Aetna could not lawfully treat any part of his otherwise undifferentiated settlement amount as a payment "for disability" as required to apply the 50% Provision, and Aetna erred by reducing his disability benefits as it did. For its part, Aetna defended its application of the Plan's provisions.

The District Court denied Arnone's motion for summary judgment and granted Aetna's motion for summary judgment, dismissing Arnone's complaint in its entirety and also entering judgment for Aetna on its counterclaim for $40,125. *See Arnone v. Aetna Life Ins. Co.*, No. 13-cv-5168, 2015 WL 3915607, at *10 (E.D.N.Y. June 25, 2015). The District Court addressed New York law and section 5-335 only briefly. After observing that Arnone invoked the statute "for the first time in the action" in his motion for summary judgment, it concluded that section 5-335 was irrelevant to the reconciliation of amounts due Arnone because the Plan both specified that it would "be construed in line with the law of the jurisdiction in which it is delivered" and identified that jurisdiction as the state of Connecticut. *Id.* at *9 n.8.

10

This appeal followed. On appeal, Arnone seeks reversal of the District Court's judgment in Aetna's favor as to the personal injury settlement offset. He has not challenged the judgment as to other offsets made by Aetna or as to Aetna's counterclaim.[5]

## DISCUSSION

Arnone takes the position that, because he is a New York resident who was employed in New York and injured in New York, section 5-335 applies to his settlement and prohibits Aetna from applying the 50% Provision and thereby reducing his Plan benefits. Aetna counters that New York law has no bearing on the Plan, which, by its terms, is to be construed under Connecticut law. Aetna further contends that, even if section 5-335 has some relevance to Arnone's entitlements under the Plan, ERISA preempts the statute's application. Finally, Aetna urges us to conclude that Arnone forfeited his argument under section 5-335. We address each argument in turn.

### I.     Standard of review

We review a district court's grant of summary judgment *de novo*. *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002). "When there exist no genuine issues of material fact in dispute, as is the case here, our task is to determine whether the district court correctly applied the law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (internal quotation marks omitted).

Arnone and Aetna agree that Aetna, as claims administrator, has discretionary authority to determine a participant's eligibility for benefits under the Plan. When a plan gives an administrator such discretion, "a court may not overturn the

---

[5] We note further that, on appeal, Arnone relies solely on section 502(a)(1)(B) of ERISA in support of his challenge and has abandoned the theory—rejected by the District Court as preempted by ERISA—that Aetna's offset also constituted a breach of contract. *Arnone v. Aetna Life Ins. Co.*, No. 13-cv-5168, 2015 WL 3915607, at *9 (E.D.N.Y. June 25, 2015). We express no view as to the merits of either the latter theory or the District Court's rejection of it.

administrator's denial of benefits unless its actions are found to be arbitrary and capricious." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008). In the ERISA context, an administrator's decision is arbitrary and capricious if it is made "without reason," if it is "unsupported by substantial evidence," or, most relevant here, if it is "erroneous as a matter of law." *Id.*

## II. The effect of section 5-335

We begin by addressing the straightforward question whether section 5-335, if applicable to this dispute, would prohibit Aetna's offset action—putting aside for a moment the arguments that section 5-335 should not apply. For the reasons set out below, we conclude that section 5-335 would prohibit Aetna's offset action as a matter of law and, for that reason, would render its decision arbitrary and capricious.

The current version of section 5-335 provides in relevant part:

> When a person settles a claim, whether in litigation or otherwise, against one or more other persons for personal injuries, . . . it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by an insurer. . . .
>
> No person entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by an insurer and an insurer shall have no lien or right of subrogation or reimbursement against any such settling person or any other party to such a settlement, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said insurer.

N.Y. Gen. Oblig. Law § 5-335(a).[6]

---

[6] In November 2013, about four months after Arnone filed this action against Aetna in New York state court, section 5-335 was amended. The amendment "primarily . . . replac[ed]

12

Aetna, emphasizing the statute's "subrogation or reimbursement" language and the absence of any reference to offsets, argues that section 5-335, by its terms, does not apply here because Aetna has not filed a reimbursement or subrogation claim to recover portions of the settlement proceeds. We reject this argument. Notwithstanding the statute's lack of a reference to offsets, we think that, by referring to "losses or expenses that have been *or are obligated to be* paid or reimbursed by said insurer," *id.* (emphasis added), it contemplates protecting an insured's entitlement to ongoing benefits. Even clearer still, the applicability of the first quoted paragraph, which creates a conclusive presumption that a settlement does *not* include amounts that an insurer *could* recover, is not, by its terms, limited to reimbursement and subrogation actions.

If applied to this dispute, section 5-335's conclusive presumption would bar Aetna from offsetting portions of Arnone's settlement against his ongoing disability benefits. The statute prohibits insurers from treating settlement amounts as "compensation for the cost of health care services, loss of earnings or other economic loss." N.Y. Gen. Oblig. Law § 5-335(a). There is no dispute that Aetna's offset falls within the reach of that statutory language. The offset is based on Aetna's conclusion that the settlement is an "other income benefit[]," 50 percent of which is deemed "for disability." J.A. 127-29. While payments "for disability" might not always be limited to compensation for "loss of earnings," the phrase "other economic loss" in section 5-335 is

---

references to a 'benefit provider' with 'an insurer.'" *Wurtz v. Rawlings Co.*, 761 F.3d 232, 236 n.1 (2d Cir. 2014). As we noted in *Wurtz*, the amendment applies retroactively to the period between November 12, 2009, and November 13, 2013 (the date of the amendment's enactment). *See id.*; 2013 N.Y. Sess. Laws Ch. 516 (A. 7828-A) ("This act shall take effect immediately and shall apply to all settlements entered into on or after November 12, 2009."). Because Arnone settled his personal injury suit in 2012, we conduct our analysis under the amended version of section 5-335. In any event, the amendment has no bearing on the issue before us, and we would reach the same result applying the earlier version.

quite broad. Further, the record in this case reflects that the parties understood Aetna's offset to apply to wage replacement, and Aetna has not argued otherwise on appeal.

It therefore follows that Aetna's decision to offset half of the net settlement amount against Arnone's disability benefits would, under New York law, unlawfully deny him sums to which he is entitled under the Plan. Although our review of the claims determinations made by Aetna as claims administrator is "highly deferential," *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2002), such a denial would be "erroneous as a matter of law" under section 5-335 and, accordingly, arbitrary and capricious, *McCauley*, 551 F.3d at 132 (internal quotation marks omitted).

The outcome of this appeal therefore depends on whether we apply section 5-335. If we do not apply the statute, then the judgment must be affirmed: Arnone has raised no other basis for reversal. If we do apply the statute, then the judgment must be reversed as to the issue of Arnone's entitlement to the past and ongoing benefits that Aetna has withheld on the ground that they are duplicative of amounts received from his personal injury settlement.

### III.    The applicability of section 5-335

Having determined that, if applied, section 5-335 would prohibit Aetna's offset action, we turn now to Aetna's arguments as to why section 5-335 does not apply to this dispute. For the reasons set out below, we find them unpersuasive.

#### A.    ERISA preemption

Aetna contends that ERISA preempts section 5-335 because giving section 5-335 any effect here would be "entirely inconsistent with ERISA's core congressional goal of uniformity of plan administration." Appellee's Br. at 35. This argument is flatly foreclosed, however, by our recent holding in *Wurtz v. Rawlings Co.*, 761 F.3d 232 (2d Cir. 2014).

14

ERISA contains a broadly worded preemption clause declaring that the statute "supersede[s] any and all State laws" that "*relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The "basic thrust" of this preemption provision is to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 88 (2d Cir. 2015).

But ERISA does not preempt *all* state laws that "relate to" an ERISA plan. ERISA's so-called "savings clause" exempts from preemption, as relevant here, "any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has left no doubt that "[a]n insurance company that insures a plan"—such as Aetna does for Konica—"remains an insurer for purposes of state laws purporting to regulate insurance" and "is therefore not relieved from state insurance regulation." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (internal quotation marks omitted). An ERISA plan is "bound by state insurance regulations insofar as they apply to the plan's insurer." *Id*.

Because Aetna acts as an insurer here as well as the claims administrator, the only remaining question with respect to its preemption argument is whether section 5-335 can be said to "regulate insurance" such that it falls within ERISA's savings clause. In *Wurtz*, we left no doubt that it does: "N.Y. Gen. Oblig. Law § 5-335 is saved from express preemption under ERISA . . . as a law that 'regulates insurance.'" 761 F.3d at 236. Thus, even if Aetna is correct that section 5-335 "relate[s] to" the Plan in some sense—a question we need not decide here—our precedent calls for us to treat it, notwithstanding ERISA, as a permissible regulation of New York's insurance markets, in which Aetna is an established participant.

Aetna also objects that applying the statute to Arnone's settlement stands in tension with Congress's general goal of uniform administration of ERISA plans in every jurisdiction in which a plan has participants. This is not, however, a novel, avoidable, or

15

dispositive concern: "Such disuniformit[y] . . . [is] the inevitable result of the congressional decision to 'save' local insurance regulation." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (1985); *see also Wurtz*, 761 F.3d at 244 ("Allowing plaintiffs' state-law claims under section 5-335 to proceed will not disturb ERISA's goal of providing national uniformity.").

Aetna's argument is especially unconvincing because the structure of Konica's Plan invites the very disuniformity Aetna warns of: the Plan requires offset of "[d]isability, retirement, or unemployment benefits required or provided for under any law of a government," including state governments. J.A. 127. These benefits can be expected to vary considerably by jurisdiction. The Plan, then, by its design, embraces the same sort of "dissimilar outcomes on identical claims submitted by claimants from different states," Appellee's Br. at 37-38, that Aetna contends warrant disregarding section 5-335. Aetna's resort to the specter of disuniformity thus fails to persuade us to revisit our holding in *Wurtz* in order to find ERISA preemption here.

### B. The Plan's choice of law provision

Aetna next argues that New York's section 5-335 has no purchase here because the Plan provides that it "will be construed in line with the law of the jurisdiction in which it is delivered," which the Plan identifies as Connecticut. J.A. 91. We reject Aetna's argument because, in our view, the Plan's choice of law provision does not encompass the matter at issue in this case. The Plan's choice of law provision, in stating that the Plan will be "construed" in accordance with Connecticut law, sets forth only which jurisdiction's law of contract interpretation and contract construction will be applied. In the context presented here, that provision is insufficient to bind this court to apply the full breadth of Connecticut law, to the exclusion of another jurisdiction's law, in fields other than the interpretation of the language in this contract.

16

Contractual choice of law provisions are generally enforceable under both New York law and federal common law.[7] *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001); *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993). But as we have previously observed, "[t]he effect of [a] choice-of-law clause depends on . . . its scope," and New York courts are "reluctan[t] to read choice-of-law clauses broadly." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332, 335 (2d Cir. 2005); *see also Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) ("In developing federal common law in an area, the courts may look to state law . . . ."). We may apply Connecticut law to issues within the scope of the Plan's choice of law provision and another jurisdiction's law to issues outside the provision's scope. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 397 (2d Cir. 2001).

We are not convinced that the Plan's declaration that it will be "construed" in accordance with Connecticut law requires application of Connecticut law to the specific question posed by this litigation: whether Aetna may reduce Arnone's benefits by amounts he received from the settlement of his personal injury suit, notwithstanding New York's directive to the contrary. Nothing about section 5-335 "construes" the Plan in the ordinary sense of the verb. For example, Webster's New World College Dictionary (5th ed. 2014), offers the following as its first definition of "construe": "to analyze (a sentence, clause, etc.) so as to show its syntactic construction and its meaning." The New York statute does not "analyze" any Plan provision. It does not define any term of art or provide any principle for resolving textual ambiguities in this or other benefit plans or contracts. Instead, it addresses personal injury settlements like Arnone's and limits the insurance consequences of such settlements. *See* N.Y. Gen. Oblig. Law § 5-335

---

[7] We think it unnecessary in this case to decide whether it is New York law or federal common law that determines the effect of the Plan's choice of law provision.

("When a person settles a claim . . . for personal injuries . . . it shall be conclusively presumed that *the settlement* does not include any compensation for [losses] . . . to be paid or reimbursed by an insurer." (emphasis added)). It curtails insurers' rights following an insured's settlement, irrespective of any language that may appear in the parties' contract or benefit plan.

State laws governing contracts do not necessarily relate to the contracts' construction. We think it plain, for example, that Connecticut's usury statute prohibiting "agreement[s] to receive . . . interest at a rate greater than twelve per cent per annum" governs contracts without saying anything about their construction. Conn. Gen. Stat. § 37-4. In contrast, it is clearly a rule of construction under Connecticut law that ambiguities in insurance contracts are resolved in favor of the insured "only when all other avenues to determining the parties' intent have been exhausted." *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*, 156 A.3d 539, 556 (Conn. App. Ct. 2017).

Since section 5-335 is not a statute of contract construction or of contract interpretation, it does not fall under the express terms of the Plan's choice of law provision. Section 5-335 may, of course, affect whether and how certain provisions of benefit plans—such as the Plan's "other income benefits" offset provision—are ultimately implemented. In that general respect, it perhaps might be said to "govern" the Plan's application, although even that proposition could be debated. But the Plan's choice of law provision refers only to how the Plan is "construed." Section 5-335 does not, as we read it, modify how benefit plans are "construed." Rather, section 5-335 is, by its terms, a "[l]imitation of reimbursement and subrogation claims." N.Y. Gen. Oblig. Law § 5-335. It provides a rule to which all contracts between an insurer and an insured must adhere. Section 5-335, like Connecticut's usury statute, says nothing about the construction of the language in a contract or plan. Instead, section 5-335 provides a legal rule of proof, external to any plan documents, regarding personal injury settlements.

18

This legal rule of proof applies irrespective of any language that may appear in the parties' contract or benefit plan and around which the parties cannot contract. In effect, section 5-335 calls for Aetna to abide by this external limitation in making benefits calculations under the Plan.

The contrary position—that any law resulting in a change in a plan participant's benefit level necessarily "construes" that plan—stretches the definition of "construe" to the breaking point. Accordingly, we conclude that section 5-335 does not bear on how the Plan is "construed," and therefore that the Plan's choice of law provision presents no obstacle to applying section 5-335 to Arnone's settlement.[8]

### C. Asserted forfeiture of the section 5-335 argument

In a final effort to resist application of section 5-335, Aetna seizes on the fact that Arnone did not alert it to section 5-335 during the claims administration process. It appears to be accurate, as the District Court also noted, that it was in his motion for summary judgment in that court that Arnone "for the first time" made express mention of section 5-335. *See Arnone*, 2015 WL 3915607, at *9 n.8. But we are not persuaded that Arnone has therefore forfeited his right to rely on the statute in making his arguments against offset.[9]

We have previously outlined a few principles concerning issue forfeiture in ERISA cases, albeit in the context of plan administrators that failed to preserve

---

[8] Aetna makes no argument independent of the Plan's choice of law provision that any law other than New York's should govern the insurance consequences of a settlement agreement resolving a New York lawsuit between two New York parties. Nor do we perceive any reason why New York law should not apply here. We therefore see no cause to engage in further choice of law analysis.

[9] At points in its brief, Aetna frames its forfeiture argument in terms of our standard of review: it contends that its offset action cannot be deemed arbitrary and capricious on the basis of an argument—Arnone's invocation of section 5-335—that was not raised during the claims administration process. Fundamentally, though, Aetna is simply making a forfeiture argument.

arguments for denying coverage, rather than plan participants who failed to preserve arguments in support of coverage. In *Lauder v. First Unum Life Insurance Co.*, we concluded that a proposed forfeiture finding against a plan administrator called for a "case-specific analysis." 284 F.3d 375, 381 (2d Cir. 2002). That individualized analysis, we reasoned, should be informed by whether such a finding would encourage "meaningful dialogue between plan administrators and plan members" during the claims administration process. *Id.* at 382 (alterations omitted). We deemed the *Lauder* administrator's defense forfeited after we concluded that the dialogue would have benefited from the administrator's assertion of the defense, given that it was aware at the time of all the circumstances relevant to the defense. *Id.* As relevant here, we distinguished *Lauder*'s circumstances from those of *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, in which we expressed concern that requiring administrators to raise *every* possible defense during the claims administration process would turn ERISA notices into "meaningless catalogs of every conceivable reason that the cost in question might not be reimbursable, instead of candid statements as to why the administrator . . .thinks reimbursement is unwarranted." 221 F.3d 279, 288 (2d Cir. 2000). In *Lauder*, we also justified applying a forfeiture rule as discouraging "manipulative strategies" by the administrator in the claims administration process, concerned that, absent forfeiture rulings, "plan administrators . . . will try the easiest and least expensive means of denying a claim while holding in reserve another, perhaps stronger, defense should the first one fail." 284 F.3d at 382.

Permitting Arnone to raise the section 5-335 issue here does not implicate the concerns we identified in *Lauder*. We are not worried, for example, that absent a forfeiture rule for someone in Arnone's position, the claims administration process will be undermined. Arnone has not strategically saved his best argument for last or otherwise ambushed Aetna. Even though Arnone did not expressly flag the statute

20

during Aetna's claims process, he certainly made to Aetna in substance the same argument that he now makes in court: he repeatedly informed Aetna that the settlement amounts it sought to offset were for "pain and suffering" and "not for disability," J.A. 182, 308, and that "no wage replacement was included," J.A. 182. In citing section 5-335 later, Arnone supplemented a consistently held position with legal authority, which seems to us to be permissible in this context.

Moreover, Aetna can hardly have been surprised by the emergence of section 5-335 in its dispute with a New York resident who settled a personal injury claim arising in New York. Although we are mindful of Aetna's concern regarding the administrative burdens involved in becoming familiar with the anti-subrogation laws of each state, we do not deal here with a local business tripped up by an unusual law from another state on an obscure topic. Aetna is a well-established and sophisticated insurer that operates nationwide, is subject to varying state laws in other aspects of its business, and cannot but be aware that anti-subrogation laws are a subject of division among the states. It is registered to conduct business in, and is regulated as an insurer by, the state of New York and doubtless many other jurisdictions. It is not entitled to insulate itself from the application of relevant state law by hoping that during the claims process its insureds—generally less knowledgeable and with fewer resources—fail to invoke by number a state law with which Aetna should already be quite familiar.

## CONCLUSION

The plain text of section 5-335 controls the outcome of this appeal, and all of Aetna's efforts to avoid section 5-335's application fall short. Aetna erroneously overlooked the law's provisions when it acted on its conclusion that 50 percent of the net proceeds from Arnone's personal injury settlement were "for disability" such that Aetna was permitted to reduce Arnone's disability benefits in offset. As a matter of New York statutory law, the personal injury settlement could not be so applied. Aetna has

identified no persuasive reason for treating the statute as inapplicable or ignoring it: in particular, the statute is not preempted by ERISA, nor does the Plan's choice of law clause preclude this application of New York law.

For these reasons, we conclude that the District Court erred in granting Aetna's motion for summary judgment and denying Arnone's motion for summary judgment as to the issue of Arnone's entitlement to the past and ongoing benefits that Aetna has not paid on the ground that they are duplicative of Arnone's personal injury settlement. Arnone is entitled to the unpaid benefits. Accordingly, the District Court's judgment is REVERSED IN PART, as to that issue, and the cause is REMANDED for the entry of a revised judgment consistent with this opinion.